**STUDENT PUBLIC INTEREST RESEARCH GROUP OF NEW JERSEY, INC. and Friends of the Earth, Plaintiffs,**

v.

**MONSANTO COMPANY, Defendant.**

**Civ. A. No. 83–2040.**

United States District Court,
D. New Jersey.

Jan. 21, 1985.

See also D.C., 600 F.Supp. 1479.

Michael Gordon, West Orange, N.J., Terris & Sunderland by Philip G. Sunderland, Carolyn A. Smith, Washington, D.C., for plaintiffs.

Davis, Reberkenny & Abramowitz, P.A. by Robert F. Blomquist, Kenneth D. Roth, Cherry Hill, N.J., for defendant.

Jeffrey P. Minear, U.S. Dept. of Justice Policy, Legislation & Special Litigation Section Land and Natural Resources Division, Washington, D.C., for United States amicus curiae.

## OPINION

GERRY, District Judge.

This action is a citizens' suit brought under § 505 of the Federal Water Pollution Control Act, 33 U.S.C. § 1365. The plaintiffs, two environmental groups, alleged that the defendant, Monsanto Company, had violated the Act by discharging pollutants from its Bridgeport, New Jersey plant into the Delaware River in amounts exceeding those allowed under Environmental Protection Agency (EPA) and state discharge permits. Plaintiffs sought a declaratory judgment that the defendant was in violation of the Act by exceeding permit limitations, civil penalties for some 236 such violations dating back to August 4, 1977, and an injunction against further violations.

The plaintiffs moved for summary judgment on the issue of liability for these 236 violations (from August 4, 1977 through September 12, 1983). That motion did not ask the court for injunctive or declaratory relief, or for an assessment of penalties based on the violations. By order dated December 14, 1983, this court granted the plaintiffs' motion.

Based on that ruling, the defendant's potential exposure to penalties is substantial. The Act authorizes a penalty of $10,-000 for each day of violation. 33 U.S.C. § 1319(d). Depending on how that section is interpreted, the defendant may be liable for up to $2,360,000. (Some of the violations are daily average discharges in excess of allowable average output. The court is not certain exactly how this limitation squares with the "per day" language of the civil penalty provision, since an average does not represent a violation on any given day. This issue is not yet ripe for disposition.)

The defendant is now moving on a variety of grounds in an effort to reduce its potential exposure. First, the defendant seeks to amend its answer to add the affirmative defenses of laches and a statute of limitations bar. Second, the defendant seeks to argue that the Act does not authorize citizens to seek civil penalties for violations preceding the onset of the lawsuit or, at worst, violations occurring more than two years prior to suit. Third, the defendant argues that the provisions of the Act authorizing citizens to seek the imposition of civil penalties are unconstitutional.

1. *Amendment of answer.* At the risk of taking the liberal spirit of Rule 15(a) too far, the court will permit the proposed amendments and will address the merits of the amendments below.

2. *Limits on liability for violations preceding the filing of the complaint.*

**1476**

■ a. The defendant argues that the plain meaning of the statute, the legislative history of the Act, and the case law all indicate that citizens are not authorized to seek penalties for past violations of the Act, that is, for violations preceding the date the complaint is filed.

As a preliminary matter, the plaintiffs argue that this matter has already been decided by the court in its opinion on plaintiffs' motion for summary judgment, and that the "law of the case" doctrine precludes reargument. Further, the plaintiffs argue that the defendant has waived this possible defense, pursuant to Rule 12(h)(2). Reviewing our bench opinion of November 18, 1983, there can be little doubt that we did decide this issue when we stated that "The plain language of 33 U.S.C. § 1365 indicates ... that civil penalties may be assessed in citizens' suits under the Act. The cases the defendant has submitted ... merely deny a private right of action for damages to plaintiffs in citizen suits." The defendant argues that all we decided was that it had violated the Act but did not decide whether penalties could be assessed or the time frame of such penalties. We disagree. Nevertheless, at the risk of being repetitious, we will pass over the plaintiffs' preliminary objections and briefly address again the merits of this issue.

First, the defendant asks that we consider the "plain meaning" of the citizens' suit provision of the statute, which reads, in part:

> [Any] citizen may commence a civil action against any person ... who is alleged to be *in violation* of ... an effluent standard or limitation under this Act.

> . . . . .

> The district courts shall have jurisdiction ... to apply *any appropriate civil penalties* under [33 U.S.C. § 1319].

33 U.S.C. § 1365(a) (emphasis added). The defendant argues that "in violation" clearly refers to violations in the present, that is, occurring no earlier than the date of suit. The court does not believe that "in violation" necessarily confines violations to those presently or prospectively occurring.

A plausible construction of the language is that one is "in violation," and continues to be "in violation" by having "violated." In other words, the taint of a past violation is continuing. In any event, however, the next paragraph of § 1365(a) quite specifically refers to the court's power to impose civil penalties in citizens' suits and contains no limiting time frame. This would seem to defeat defendant's argument.

However, the defendant states that "appropriate" penalties, within the context of the earlier language, refers to penalties for present violations: that only these penalties are "appropriate." The reasoning here seems somewhat circular. This court believes "appropriate" directs the court to use its discretion to order maximum or less-than-maximum penalties, based on the facts of the case. The court therefore rejects the defendant's construction of the statute. At the least, it cannot be denied that the statute is somewhat equivocal, in which case the "plain meaning" rule cannot be of much relevance.

The legislative history that the defendant cites does not convince the court to alter its conclusion either. It is true that in some places the congressional reports speak in terms of "abatement" of violations, implying prospective relief. *See* 1972 U.S.C.C. A.N. 3746, 3747. But in some of these instances, the reports refer to the Government's initiation of abatement proceedings, not merely initiation by citizens. It can hardly be argued that the Government is restricted to abatement actions, and we do not read the legislative history to mean that citizens are so restricted. Rather, we read the references to "abatement" to merely indicate one possible avenue of relief. Elsewhere, the reports speak of "enforcement" proceedings, a term not so narrow as to exclude penalty proceedings. *Id.* And elsewhere, the reports speak of the "right" of citizens to seek "vigorous enforcement action" and refer to such action as a "public service." *Id.* at 3730, 3747. We read the legislative history as conferring on citizens the same power to seek relief as is conferred on the Government, including the right to seek penalties for

past violations. We construe the statute as one incorporating the private attorneys general concept and reject a construction which would permit a defendant to escape liability for past violations by present compliance. That would hinder the ambitious aims of the legislation and not encourage the deterrent effect that the penalties are in part designed for. *See Sierra Club v. Alcoa*, 585 F.Supp. 842, 854 (N.D.N.Y. 1984).

The defendant next urges that, as a penal statute, § 1365 must be strictly construed and any ambiguity must be resolved in favor of the defendant. The court does not see the application of that canon to this situation. The statute could not be clearer in stating that one who exceeds permit limitations is subject to penalties. The defendant had full notice of this and was well aware that it was at least subject to suit by the Government. To argue lack of notice is disingenuous.

Finally, the defendant cites certain cases whose language is equivocal, but somewhat supportive of its position. In the *Sea Clammers* case, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), the court stated that the Act authorizes only prospective relief. *Id.* at 6, 101 S.Ct. at 2619. But this statement was made in the context of a suit for private damages. Later in the same opinion, the court noted that penalties may be ordered in citizen suits. *Id.* at 14 n. 25, 101 S.Ct. at 2623 n. 25. Language in the *City of Evansville* case, 604 F.2d 1008, 1014 (7th Cir.1979), that suits for past violations are not authorized, also comes within the context of a private damage suit and seems addressed most particularly to that issue. The *Stepan Chemical* case, 544 F.Supp. 1135, 1145–46 (E.D.Pa.1982), on the one hand states that only prospective relief is authorized, and on the other hand states that penalties may be imposed. By this seeming contradiction, the court may have meant that a plaintiff could seek prospective relief from the *effects* of past discharges through, *inter alia*, the imposition of fines. In this regard, *see Illinois v. Outboard Marine*, 680 F.2d 473 (7th Cir.1982). Other cases permitting citizen suits seeking penalties for past violations are *Sierra Club v. Alcoa*, 585 F.Supp. 842, 853–54 (N.D.N.Y.1984) and *NJPIRG v. Ragen*, Civ. 83–1604 (D.N.J.1983), bench opinion of J. Lacey, Dec. 19, 1983. For all of the reasons outlined above, we accept the reasoning of these latter cited cases and reaffirm our original conclusion that § 1365(a) authorizes citizen suits for the imposition of civil penalties.

b. The defendant next urges that even if we reject (as we have) its construction of the Act, its liability is still limited to violations occurring within two years of the filing of suit. The defendant suggests that we "borrow" the New Jersey two-year limitations statute applicable to forfeitures under a penal statute. *See* N.J.S.A. 2A:14–10a.

As a general principle, where a federal statute contains no limitations period, the court must borrow the period from an analogous state statute (covering a similar cause of action). *Johnson v. Railway Express*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). However, the court must not do so where application of a given limitations statute would be inconsistent with the federal policy underlying the cause of action under consideration. *Id.* at 465, 95 S.Ct. at 1722.

On September 10, 1984, Judge Thompson of this court, in *NJPIRG v. Tenneco*, 83–2105, ruled that the state statute the defendant here urges we borrow is not consistent with the federal policy underlying the Act in that it is too short. We agree and rely on the reasons so ably expressed by Judge Thompson.

c. Finally, the defendant urges that laches bars the imposition of civil penalties for all or some of the past violations. An essential element of a laches defense is a showing of undue prejudice to the party against whom the action is brought, this prejudice being a "function of the changing conditions and relationships occasioned by the delay." *Harris v. Beynon*, 570 F.Supp. 690, 692 (N.D.Ill.1983). The only prejudice defendant points to is the possibility it might have to pay a fine. That is not the

sort of prejudice that laches is designed to mitigate.

In sum, we continue to hold that Monsanto Company is subject to possible penalties for all violations, subject, of course, to "appropriate" restraint in the imposition of such penalties.

3. *Unconstitutionality of § 1365's authorization of citizen suits seeking penalties.*

■ The parties, as well as the Attorney General of the United States, have rather thoroughly briefed the issue of the constitutionality of the Act's citizen's suit provision.

The defendant argues that the authorization of civil penalty enforcement power in the hands of private parties is an unconstitutional delegation in that (a) Congress has failed to adequately articulate standards to be followed by non-governmental entities in exercising a traditionally governmental function; (b) Congress has failed to adequately connect the power to seek penalties to the fact of injury; and (c) Congress has granted citizens power to protect more than their own interests. The defendant further urges that § 1365 violates the separation of powers doctrine in that: (a) citizen enforcement, in the face of an agency enforcement action, presents the potential for disruption of the proper balance between branches of Government by infringing on the powers of the executive branch; and (b) that this potential for disruption is not outweighed by the need to promote objectives within the constitutional authority of Congress.

The court has carefully reviewed the defendant's arguments and, for all the vigor with which they have been put forward, finds them without merit.

Turning first to the separation of powers argument, the defendant's argument seems to imply that Congress may only assign enforcement powers to the executive branch, exclusive of any other entity, governmental or non-governmental. This argument is untenable. In *Davis v. Passman*, 442 U.S. 228, 241, 99 S.Ct. 2264, 2274, 60 L.Ed.2d 846 (1979), the Supreme Court stated:

Statutory rights and obligations are established by Congress, and it is entirely appropriate for Congress in creating these rights and obligations to determine, in addition, who may enforce them and in what manner.

The number of federal statutes providing for concurrent enforcement by executive agencies and citizens is truly staggering. Moreover, even where a private action is not expressly authorized in a statute, courts have often implied one.

We believe the defendant's argument should be addressed to Congress, not this court. It is the wisdom of the policy and of the dual enforcement scheme which the defendant is attacking. We do not believe that a distinction the defendant urges—between statutes authorizing citizen suits for damages (*e.g.*, antitrust, securities) and this statute's authorization for penalties payable only to the Government—is of consequence. This statute in no way vests plaintiffs with greater "prosecutorial" powers than statutes authorizing private damages. In such statutes, after all, the recovery of damages is a vindication, in substantial part, of the public interest. Moreover, a clean water violation generally has less of a financial impact on plaintiffs than, for example, an antitrust or securities violation. This justifies the use of a penalty remedy as opposed to a private damages remedy.

The further argument, that citizen enforcement action may hinder agency action, seems to ignore the provisions of § 1365(b), which preclude citizen suits where the Government is diligently prosecuting an action. But in any event, this is not a constitutional argument. Congress may vest enforcement power in whomever it pleases and may unwisely create a situation where enforcers act at cross-purposes. (The court, of course, in no way wishes to imply that Congress acted unwisely in this instance.) Congress apparently did not intend for the EPA's restraint in prosecuting Act violators to bar prosecution entirely, and its intent here is similar to its intent in so many "private attorneys general" stat-

utes. Nor does § 1365 cause the judiciary to interfere with the EPA's judgments of how to administer itself and enforce the laws over which it has jurisdiction. The court does not force the EPA to do anything, but merely itself passes upon cases properly before it, regardless of who brings them.

Turning to the delegation arguments, we find them wide of the mark as well. Again, we believe that the defendant's arguments are more properly addressed to Congress, as they merely question the Legislature's wisdom.

The lack of standards to guide the judiciary in deciding *how much* to fine is merely indicative of a congressional judgment that the judiciary has the greatest competence to make such determinations. In this regard, the Act's penalty provision in no way differs from penalty provisions found elsewhere, or in criminal sentencing. And the alleged standardlessness would also be present in suits brought by the EPA. The lack of a limitations period in the statute is again a feature of many federal statutes and does not seem to be a constitutional requirement of a delegation. Conceivably, Congress could be delegating the power to sue *at any time*, only subject to judicial narrowing. There would not seem to be a problem with such an approach, at least on delegation grounds.

The argument that the Act provides no standards as to when citizens may be precluded from suit by concurrent EPA action is simply not correct in light of the language of § 1365(b). Nor is it correct to say that § 1365(a) allows citizens to "veto" EPA enforcement actions or that it forces the EPA to bring suit. These arguments are inaccurate; and even assuming their accuracy, they merely point to a consequence of nearly every dual enforcement scheme. Again, we are concerned with a policy decision of Congress, subject to question as to its wisdom rather than its constitutionality.

The defendant's arguments regarding standing/proximate cause seem to have nothing whatever to do with delegation but have to do with Congress's decision on how broad a class of citizens it would deem "injured." Defendant might at least logically attack the Act's standing standards on U.S. Constitution, Article III (case or controversy) grounds, although its success on such a theory is hardly likely, at least in this court.

Finally, the argument that Congress has granted citizens the power to protect more than just their own interests is a protest against the liberal standing requirement in another guise, and merely seeks to narrow the type of interests citizens may seek to protect. The case on which the defendant relies, *Hampton v. Mow Sun Wong*, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976), does not seem to this court to be apposite.

Accordingly, the defendant's motion regarding the unconstitutionality of § 1365(a) is denied. An order consistent with this opinion has been entered.