810 F.2d 1511
 55 USLW 2491, 1987-1 Trade Cases 67,455
 FEDERAL TRADE COMMISSION; Plaintiff-Appellee
v.
AMERICAN NATIONAL CELLULAR, INC.; Joseph Steingold; Earl
Serap; Michael G. Godfree, Defendants-Appellants
and
Tabb Associates, Inc.; Charles M. Fischer; Defendants.
 No. 86-5760.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 1, 1986.
Decided Feb. 25, 1987.
 
 John R. McDonough, Los Angeles, Cal., for defendants-appellants.
 Federal Trade Com'n, Jerold D. Cummins, Deputy Asst. General Counsel, Washington, D.C., for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before TANG, FARRIS and POOLE, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 In November 1985, the Federal Trade Commission (FTC) filed an action in United States District Court seeking preliminary and permanent injunctive relief against the above-named defendants under section 13(b) of the Federal Trade Commission Act (Act), 15 U.S.C. Sec. 53(b) (1982). The FTC alleged that the defendants had violated Sec. 5(a) of the Act, 15 U.S.C. Sec. 45(a) (1982), by persuading investors to utilize the services of defendant American National Cellular, Inc. (ANC), in obtaining a cellular telephone license in a lottery to be held by the Federal Communications Commission (FCC). The lottery was designed to make an equitable award of a limited number of the cellular telephone licenses among many qualified applicants.
 
 
 2
 The FTC charged the defendants with intentionally misleading investors through false and deceptive statements regarding the likelihood of obtaining a license and by failing to disclose that the purchase of ANC's service was a high risk investment in which the investor most likely stood to lose his monies. The FTC sought a temporary restraining order, a freeze of assets, appointment of a temporary receiver, and an order to show cause why a preliminary injunction and the appointment of a permanent receiver should not be granted.
 
 
 3
 The district court issued the temporary orders and directed defendants to show cause why the court should not appoint a permanent receiver and continue appropriate preliminary injunctive relief.
 
 
 4
 The defendants' answer denied the FTC's charges and asserted that the Act violated Article II, sections 1 and 3 of the United States Constitution[1] by authorizing the FTC to enforce federal law, a function reserved to the executive branch of which the FTC is not a part.
 
 
 5
 On February 26, 1986, the district court, relying on Humphrey's Executor v. United States, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935), held the FTC's enforcement authority constitutional and entered orders granting a preliminary injunction with a freeze of assets, and appointing a receiver. Defendants ANC, Joseph Steingold, Michael G. Godfree, and Earl Serap timely appealed. Subsequently, ANC, Joseph Steingold, and Michael G. Godfree requested voluntary dismissal of their appeals, which we granted by order of February 12, 1987. Earl Serap remains as the lone appellant. We affirm.
 
 STANDARD OF REVIEW
 
 6
 We review de novo the district court's ruling that the enforcement power of the FTC is constitutional. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 DISCUSSION
 
 7
 The only issue is whether the enforcement statutes of the Act, 15 U.S.C. Secs. 45(a) and 53(b), violate the constitutional principle of separation of powers.
 
 
 8
 Appellant Serap argues that in seeking injunctive relief against him, the FTC is enforcing federal law, a function within the exclusive province of the executive branch under the Constitution. Appellant contends that executive power can only be exercised by the President or by "officers of the United States", appointed by the President with the advice and consent of the Senate, pursuant to Article II, section 2 of the Constitution (Appointment Clause), and who serve at the President's pleasure. FTC Commissioners are appointed by the President for seven-year terms and may not be removed by him except for cause. 15 U.S.C. Sec. 41 (1982). Appellant argues that, since the Commissioners do not serve at the President's pleasure and are not subject to his supervision, allowing the FTC to engage in enforcement violates the doctrine of separation of powers.
 
 
 9
 Humphrey's Executor, on which the district court relied, arose out of President Franklin Roosevelt's attempt to remove FTC Commissioner William Humphrey in 1933, after Humphrey refused Roosevelt's request to resign. Humphrey later died and the executor of his estate sued in the Court of Claims to recover salary not paid Humphrey for the remaining portion of his seven year term. Citing legislative history, Justice Sutherland, speaking for the Court, said that Congress had established the FTC to be an independent and essentially non-partisan body of experts to administer the Federal Trade Commission Act. Id. at 624-25, 55 S.Ct. at 872-73. He concluded that Congress intended "a body which shall be independent of executive authority, except in its selection, and free to exercise its judgment without the leave or hindrance of any other official or department of the government." Id. at 625-26, 55 S.Ct. at 872-73 (emphasis in the original). The opinion reasoned that, in limiting the President's power to remove Commissioners except for cause, Congress only meant to limit the President's removal power, not to eliminate his appointment function. Id. at 626, 55 S.Ct. at 873. The Court finally concluded that this limitation on the President's power did not infringe on the constitutional appointment power of the Executive.
 
 
 10
 The Court also considered the constitutionality of the FTC. It found that the FTC was properly constituted and empowered by Congress, and that to the extent it could be said to exercise any executive function "it does so in the discharge and effectuation of its quasi-legislative or quasi-judicial power, or as an agency of the legislative or judicial departments of the government." Id. at 628, 55 S.Ct. at 874.
 
 
 11
 We find no case purporting to limit or overrule Humphrey's Executor. On the contrary, we note the continuing vitality of that authority as recently shown in Bowsher v. Synar, --- U.S. ----, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986). Bowsher held invalid portions of the Balanced Budget and Emergency Deficit Control Act of 1985 (the Gramm-Rudman-Hollings Act) which vested the Comptroller General with the executive function of initiating cuts in the federal budget. Although the Comptroller General is appointed by the President with the advice and consent of the Senate, pursuant to the Appointment Clause of the Constitution, his removal is not by the President, but by a joint resolution of Congress or impeachment. Id. at 3185. Citing Humphrey's Executor, the Bowsher court reasoned that the Comptroller General's powers under the Gramm-Rudman-Hollings Act violated the doctrine of separation of powers, because Congress could not reserve for itself the power of removal of an officer charged with the execution of the laws except by impeachment. Id. at 3188. We believe implicit in this holding is the proposition that "officers of the United States," including FTC Commissioners, who are appointed by the President with the advice and consent of the Senate, and are subject to Congressional removal only by impeachment, may engage in the enforcement of federal law.
 
 
 12
 Appellant contends that, since section 13(b) of the Act was not yet enacted when Humphrey's Executor was decided, Humphrey's Executor is not controlling for evaluating the constitutionality of that section. We disagree. In Humphrey's Executor, the Court discussed the FTC's power to issue cease and desist orders, and to obtain enforcement of those orders from the courts of appeals. Humphrey's Executor, 295 U.S. at 620-21, 55 S.Ct. at 870-71. We conclude that the FTC's current power to seek injunctive relief pursuant to section 13(b) does not so materially differ from the power to seek cease and desist orders as to render Humphrey's Executor inapposite.
 
 
 13
 We hold, therefore, that the enforcement provisions of the Act are constitutional, under Humphrey's Executor.
 
 
 14
 Having found the Act constitutional, we now proceed to review the district court's grant of the preliminary injunction. Our standard of review is abuse of discretion or whether the district court has utilized the correct legal standard. Los Angeles Memorial Coliseum Commission v. National Football League, 634 F.2d 1197, 1200 (9th Cir.1980). FTC's power to petition the district court for injunctive relief and to freeze assets is well established. See FTC v. H.N. Singer, Inc., 668 F.2d 1107 (9th Cir.1982). We find no reason to disturb the district court's decision.
 
 
 15
 For the foregoing reasons, the judgment is AFFIRMED.
 
 
 16
 TANG, Circuit Judge, concurring specially in the result:
 
 
 17
 I concur in the result. The majority makes, however, an unsupportable logical leap from the holding of Bowsher v. Synar, --- U.S. ----, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986), and wrongly relies upon that case as authority for the result it reaches. Further, the majority dispatches ANC's separation of powers challenge in a summary fashion, without a discussion of the merits of the argument. We should address each of the arguments of the litigants. The constitutionality of independent agencies has never been fully adjudicated; in a similar case, the Assistant U.S. Attorney admitted at oral argument that the issue " 'has been avoided for years.' " See Ticor Title Insurance Co. v. FTC, 625 F.Supp. 747, 751 (D.D.C.1986). Accordingly, some discussion of both of these issues is necessary.
 
 I. The Impact of Bowsher
 
 18
 The majority devotes a paragraph of discussion to Bowsher, in which the Supreme Court held that the grant of certain budget-cutting powers to an agent of Congress violated the principle of separation of powers. From this discussion, the opinion concludes remarkably that officers of the United States, "including FTC Commissioners, may engage in the enforcement of federal law."
 
 
 19
 This conclusion is flawed in two aspects. The first error is that the conclusion directly contradicts Humphrey's Executor, upon which the majority principally, and correctly, relies in support of the result. The Supreme Court's language in Humphrey's Executor was clear:[The FTC] cannot in any proper sense be characterized as an arm or an eye of the executive ... Its duties are performed without executive leave and, in the contemplation of the statute, must be free from executive control.... [T]he commission acts in part quasi-legislatively and in part quasi-judicially.... To the extent that it exercises any executive function, as distinguished from executive power in the constitutional sense, it does so in the discharge and effectuation of its quasi-legislative or quasi-judicial powers, or as an agency of the legislative or judicial departments of the government.
 
 
 20
 295 U.S. at 628, 55 S.Ct. at 874 (emphasis supplied).
 
 
 21
 To classify Federal Trade Commissioners as "officers of the United States" is to suppose that those commissioners, who may not be removed by the President except for cause, serve at the pleasure of the President. But they certainly do not so serve. Id. Nevertheless, from Bowsher the majority draws the "implicit" proposition that Federal Trade Commissioners are "officers of the United States" who may enforce federal law. I cannot join in such a conclusion which finds support in neither Humphrey's Executor nor Bowsher itself.
 
 
 22
 The second error is found in the concluding sentence of the Bowsher discussion. Even if the majority removed the offending phrase "including FTC Commissioners," the statement is entirely unremarkable, and provides no support for the opinion's ultimate conclusion. The ultimate conclusion is that the bringing of enforcement actions by an independent agency does not violate the principle of separation of powers. I fail to see how the notion that the executive branch is charged with the enforcement of federal law lends any support to the ultimate conclusion. The issue in this case is clearly not whether the executive branch has the power to enforce the laws. That much is clear from the text of Article II. The question is whether an independent agency, such as the FTC, may bring an enforcement action without impermissibly exercising "executive power in the constitutional sense," see Humphrey's Executor, 295 U.S. 602 at 628, 55 S.Ct. at 874. In this sense, Bowsher is off point. By the explicit language of the Supreme Court, Bowsher has absolutely nothing to do with separation of powers concerns as related to independent agencies. 106 S.Ct. at 3188 n. 4.
 
 
 23
 Bowsher is only important for our purposes because it does not alter the conclusion we reach. In Bowsher, the Supreme Court held invalid portions of the Balanced Budget and Emergency Deficit Control Act of 1985 [the "Gramm-Rudman-Hollings Act"], which vested the Comptroller General with the power to initiate cuts in the federal budget. 106 S.Ct. at 3188. Unlike the FTC, which is an independent agency whose members are removable by the President for cause, see id. n. 4, the Comptroller General is removable only by the Congress. Id. at 3189. Accordingly, the principal issue in Bowsher was not whether the grant of certain powers to an independent agency violated separation of powers, but instead whether the grant of certain powers to a member of the legislative branch violated separation of powers. In the instant case, it is clear that Congress has created an independent agency over which it has no powers of removal except by impeachment. No Congressional control exists over FTC enforcement. Contrast the removal powers Congress wielded with regard to the Comptroller General in Bowsher. See 106 S.Ct. at 3188-89. We are simply not concerned here with the assignment of executive powers to a person removable by the Congress--the fundamental constitutional flaw embodied in the Gramm-Rudman-Hollings Act.
 
 
 24
 II. Historic Validity of Similar Congressional Grants of Power
 
 
 25
 The majority omits to discuss the law related to a question which has never been fully adjudicated, and which has been "avoided for years." Fairness to the litigants requires some discussion of the law regarding similar grants of power to administrative agencies, and the logic supporting their validity.
 
 
 26
 Despite the longstanding validity of Congressional grants of similar powers of enforcement in independent agencies, ANC suggests that the "executive power" and "take care" clauses* confer upon the President exclusive power to execute all of the laws, based on Nixon v. Fitzgerald, 457 U.S. 731, 750, 102 S.Ct. 2690, 2701, 73 L.Ed.2d 349 (1981) (executive power clause grants President power to enforce federal law). I find no authority in Nixon or elsewhere to support such an argument. Although the powers assigned to the three branches are functionally identifiable, the Supreme Court has repeatedly recognized that such powers are not "hermetically" sealed from each other. INS v. Chadha, 462 U.S. 919, 951, 103 S.Ct. 2764, 2784, 77 L.Ed.2d 317 (1982) (citing Buckley v. Valeo, 424 U.S. 1, 121, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1975)). Accordingly, the Supreme Court and others have validated various Congressional grants of powers to administrative agencies. See, e.g., Palmore v. United States, 411 U.S. 389, 408, 93 S.Ct. 1670, 1681, 36 L.Ed.2d 342 (1973) (upholding exercise of judicial authority by District of Columbia courts established by Congress); Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 400, 60 S.Ct. 907, 915, 84 L.Ed. 1263 (1940) (upholding fixing of prices and adjudication by National Bituminous Coal Commission as valid delegation of legislative power to regulate commerce). See also United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (Congress vested in Attorney General power to assist in conduct of criminal litigation against United States government); I.C.C. v. Chatsworth Cooperative Marketing Association, 347 F.2d 821, at 822 (7th Cir.1965) (upholding power of Intestate Commerce Commission to initiate proceedings to enforce Interstate Commerce Act), cert. denied, 382 U.S. 938, 86 S.Ct. 390, 15 L.Ed.2d 349 (1965); United States v. Hess, 317 U.S. 537, 547, 63 S.Ct. 379, 385, 87 L.Ed.2d 443 (1943) (upholding citizen suits and disapproving of argument that control of litigation be left solely to Attorney General); Student Public Interest Research Group v. Monsanto Co., 600 F.Supp. 1474, 1478 (D.N.J.1985) (upholding delegation of civil penalty enforcement power to private parties). Cf. Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 640-41, 72 S.Ct. 863, 872-73, 96 L.Ed. 1153 (1952) (Jackson, J., concurring) (executive power clause not a grant in bulk of all conceivable executive power).
 
 
 27
 Nor do I read INS v. Chadha, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), to dictate otherwise. In Chadha the Court held that the legislative veto of the Attorney General's suspension of deportation of an alien violated the Constitution because, inter alia, it precluded the President from exercising his veto power. Id. at 958, 103 S.Ct. at 2787. Chadha did not address the powers exercised by independent agency members, but instead examined the circumvention of the constitutional requirement that all legislation be presented to the President, who might veto the legislation. Id. Here, unlike Chadha, no legislative control is asserted over an executive prerogative. See Ameron, Inc. v. United States Army Corps of Engineers, 787 F.2d 875 (3d Cir.1986). Nothing in Chadha indicates that Congress could not, pursuant to its powers to control immigration and nationality, delegate the power to suspend deportation to an independent agency whose members were removable by the President for cause.
 
 
 28
 Certainly the modern proliferation of administrative agencies has severely strained the Framers' pristine notion of separation of powers. Buckley, 424 U.S. at 281, 96 S.Ct. at 755 (White, J., concurring). Nevertheless, I doubt the wisdom of invalidating a statutory mechanism which Congress, in supervising the various fields over which it enjoys constitutional reign, has seen fit to create frequently in order to administer complex and sweeping legislative ends. Examples abound of Congress' judgment that the various administrative agencies should have the power to seek injunctive relief, or similar remedies, pursuant to their statutory mandates. See, e.g., 2 U.S.C. Secs. 437c(b)(1), 327g(a)(6) (Federal Election Commission empowered to obtain injunctive relief and seek compliance through civil enforcement); 15 U.S.C. Secs. 77t(b), 78u(e) (SEC empowered to obtain injunctive relief); 7 U.S.C. Sec. 13a-1 (Commodity Futures Trading Commission empowered to obtain injunctive relief); 29 U.S.C. Sec. 160(e), (j) (NLRB empowered to obtain judicial enforcement of its orders and restraining orders). Such statutes reflect Congress' determination that the power to seek enforcement is crucial to the effective administration of agency responsibilities. See FTC v. Dean Foods Co., 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966) (it would stultify Congressional purpose to say that FTC did not have incidental power to seek preliminary injunction under All Writs Act, 28 U.S.C. Sec. 1651(a))." Today we reaffirm that history of deference to those determinations.
 
 
 
 [1]
 Article II, section 1, states that "[t]he executive Power shall be vested in a President of the United States of America." Article II, section 3, states that the President "shall take Care that the Laws be faithfully executed."
 
 
 *
 Article II, section 1, states that "[t]he executive Power shall be vested in a President of the United States of America." Article II, section 3, states that the President "... shall take Care that the Laws be faithfully executed ..."