**DELAWARE VALLEY TOXICS COALITION and Philadelphia Area Project on Occupational Safety and Health, Plaintiffs,**

v.

**KURZ–HASTINGS, INC., Defendant.**

Civ. A. No. 92–5961.

United States District Court,
E.D. Pennsylvania.

Feb. 17, 1993.

Jerome Balter, Philadelphia, PA, for plaintiffs.

Louis W. Fryman, Albert J. Slap, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for defendant.

## MEMORANDUM/ORDER

KATZ, District Judge.

AND NOW, this 17th day of February, 1993, upon consideration of Motion of Kurz–Hastings, Inc. for Reconsideration, or in the Alternative, for Certification for Appeal of an Interlocutory Order, Pursuant to Local Rule 20(g), Rule 5 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 1292(b), Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Reconsideration of Court Order of December 29, 1992, or for Certification of that Order pursuant to 28 U.S.C. § 1292(b), and after hearing the parties at a pretrial conference, it is hereby ORDERED that the Motion is DENIED.

## I. INTRODUCTION

By Order of December 29, 1992, this court denied the defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment. The defendant now asks that the court reconsider its decision, or, in the alternative, certify the question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

This suit was filed by the plaintiffs under the Emergency Planning and Community Right-to-Know Act (EPCRA), 42 U.S.C. §§ 11001 et seq. (West Supp.1992).[1] Under EPCRA, an operator of a facility subject to the requirements of 42 U.S.C. § 11023 annually "shall complete a toxic chemical release form" on July 1 of the following calendar year.[2] 42 U.S.C. § 11023(a). This regulation was effective beginning in the calendar year 1987. *Id.*

Both plaintiffs in this case are non-profit tax-exempt groups. Plaintiff Delaware Valley Toxics Coalition ("DVTC") provides assistance to individuals and organizations in the greater Philadelphia area who are faced with environmental pollution problems or who are threatened by proposed facilities which may create environmental pollution problems. Complaint ¶ 11. DVTC annually prepares and publishes toxic chemical release data for the greater Philadelphia area, and provides information on toxic chemical releases to organizations and individuals about the local environmental quality. Complaint ¶ 12. DVTC also has presented its release data to the West Chester (Pa.) Borough Council and to community groups in the Philadelphia area. Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss, Ex. A, ¶ 17. DVTC undertook a computer study to determine if any area companies failed to submit the required reports, because it was concerned that its reports, based on EPA data, were not complete. *Id.* at ¶¶ 8–10, 19, 20. This study required the purchase of various items and the expenditure of at least 250 hours of time by DVTC staff. *Id.* at ¶ 21. The expenditure of time to discover the defendant's alleged violation reduced the time and efforts that DVTC staff had to disseminate information and to educate and train others regarding its program. *Id.* at ¶ 22.

Plaintiff Philadelphia Area Project on Occupational Safety and Health (PHILA-POSH) is composed of approximately 200 local trade unions and provides assistance to workers and unions in preventing on-the-job injuries and in preventing on-the-job excessive exposure to hazardous chemicals. Complaint ¶¶ 13, 14. Members of PHILA-

---

1. EPCRA is Title III of the Superfund Amendments and Reauthorization Act, Pub.L. No. 99–499, 100 Stat. 1613, which was enacted in 1986.

2. The purpose of the release forms are "to inform persons about releases of toxic chemicals to the environment; to assist governmental agencies, researchers, and other persons in the conduct of research and data gathering; to aid in the development of appropriate regulations, guidelines, and standards; and for other similar purposes." 42 U.S.C. § 11023(h).

POSH live, work and travel past or near the defendant's manufacturing plant. Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss, Ex. B, Moran Aff., and Ex. C., Meyers Aff.

The sole defendant in this case, Kurz-Hastings, operates a decorative foil manufacturing plant located in Northeast Philadelphia. Def. Motion to Dismiss, Ex. A, Frantz Aff. ¶ 1. The defendant does not contest the fact that it was required under 42 U.S.C. § 11023(a) to file annual reports on its toxic chemical releases for the years 1987 through 1990.

Pursuant to EPCRA requirements, the defendant filed "Form R" reports with the United States Environment Protection Agency (EPA) for the calendar years 1987, 1988, 1989, 1990, 1991. Def. Motion to Dismiss, Ex. A, Frantz Aff. at ¶ 10. Except for the 1988 report, all of these reports were filed late. Only after the plaintiffs transmitted a sixty day notice-to-sue letter to the defendant, did the defendant file the required forms on July 20, 1992. Complaint ¶¶ 21–24. Three days later, the defendant filed a revised Form R for the year 1988. Def. Motion to Dismiss, Ex. A, Frantz Aff. at ¶ 12. Defendant filed its Form R for calendar year 1991 on August 28, 1992. *Id.* at ¶ 11.

This suit was filed by the plaintiffs against the defendant on October 15, 1992. The plaintiffs may have given the proper authorities and the defendant the requisite sixty days prior notice pursuant to 42 U.S.C. § 11046(d). Complaint, Ex. A.

## II. STANDARD OF REVIEW

■ The defendant filed its original motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(1) allows the court to dismiss a suit for lack of jurisdiction over the subject matter. The court in deciding motions pursuant to Rule 12(b)(1) are not restricted just to the facts pleaded in the complaint, but can rely on affidavits and other evidence properly before the court. *Warner Cable Communications v. Borough of Schuylkill Haven*, 784 F.Supp. 203, 205 (E.D.Pa.1992). Rule 12(b)(6) allows a court to dismiss a suit for failure to state a claim upon which relief can be granted. A complaint, however, "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). When evaluating a claim under Rule 12(b)(6), the plaintiff's allegations are assumed to be true, and are to be viewed liberally, "giving the plaintiff the benefit of all inferences which fairly may be drawn therefrom." *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1175 (3d Cir.1992). If matters outside the pleadings are presented and considered by the court, the motion is treated as a motion for summary judgment. Fed.R.Civ.P. 12(b).

■ To the extent this court must rely on evidence other than just the complaint in deciding whether the plaintiffs have failed to state a claim for which this court may grant relief, the defendant requested that its motion be considered one for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). At the summary judgment stage, the court does not weigh the evidence and determine the truth of the matter but rather it determines whether or not there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing that there are no genuine issues of material facts. *Gans v. Mundy*, 762 F.2d 338, 340–41 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

## III. DISCUSSION

*A. Unlawful delegation of executive power*

■ Under 42 U.S.C. Section 11046(a)(1), Congress authorized citizen suits against

owners or operators of facilities who must comply with EPCRA requirements. In pertinent parts the statute provides:

(1) Citizen suits

Except as provided in subsection (e) of this section, any person may commence a civil action on his own behalf against the following:

(A) An owner or operator of a facility for failure to do any of the following:

\* \* \* \* \* \*

(iv) Complete and submit a toxic chemical release form under section 11023(a) of this title.

42 U.S.C.A. § 11046(a) (West Supp.1992).[3]

The defendant challenges the constitutionality of this provision. The defendant asserts that Congress has unconstitutionally delegated Executive power by allowing any citizen to sue and thus has violated the separation of powers doctrine. The defendant cites *Lujan v. Defenders of Wildlife,* — U.S. —, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), as authority for its assertion.

### 1. Lujan

The defendant asserts that the EPCRA provision in issue in this case is similar to the Endangered Species Act (ESA) provision involved in *Lujan.* The ESA provision involved in *Lujan* provided in pertinent parts:

(g) Citizen Suits

(1) Except as provided in paragraph (2) of this subsection any person may commence a civil suit on his own behalf—

(A) to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof;

16 U.S.C.A. § 1540(g)(1) (West Supp.1992).

In *Lujan,* a number of environmental groups brought suit to challenge regulations promulgated by the Secretary of the Interior concerning requirements that other agencies confer with him under the ESA, only with regard to federally funded projects. The environmental groups claimed that they were injured by the lack of consultation with respect to certain funding activities abroad since these projects increased the rate of extinction of endangered and threatened species. — U.S. at —, 112 S.Ct. at 2137. The Court held that the environmental groups failed to show that they had been injured in fact. *Id.* — U.S. at —, 112 S.Ct. at 2140. The Court found that the plaintiffs' injuries were just too speculative. *Id.* The Court stated that "[i]t goes beyond the limit, however, and into pure speculation and fantasy, to say that anyone who observes or works with an endangered species, anywhere in the world, is appreciably harmed by a single project affecting some portion of that species with which he has no more specific connection." *Id.*

The *Lujan* Court did not invalidate the ESA's citizen suits provision.[4] The Court's

**3.** Subsection (e) provides that no action may be commenced under subsection (a) if the EPA has commenced and is diligently pursuing an administrative order or civil action to enforce the statute with respect to the violation of its requirements. 42 U.S.C. § 11046(e). This subsection does not apply in this case, since there is no allegation or evidence to suggest that any such action has been undertaken by the EPA.

**4.** Citizen lawsuit provisions similar in nature to the EPCRA & ESA provision have been incorporated in environmental statutes for more than 20 years and not one of these provisions has been declared unconstitutional. *See* 15 U.S.C. § 2619(a) (Toxic Substances Control Act); 16 U.S.C. § 544m(b)(2) (Columbia River Gorge National Scenic Area Act); 30 U.S.C. § 1270(a) (Surface Mining Control and Reclamation Act);

33 U.S.C. § 1365(a) (Clean Water Act); 33 U.S.C. § 1515(a) (Deepwater Port Act); 42 U.S.C. § 300j–8(a) (Safe Drinking Water Act); 42 U.S.C. § 4911(a) (Noise Control Act); 42 U.S.C. § 6305(a) (Energy Policy and Conservation Act); 42 U.S.C. § 6972(a) (Solid Waste Disposal Act); 42 U.S.C. § 7604(a) (Clean Air Act); 42 U.S.C. § 9659(a) (Comprehensive Environmental Response, Compensation, and Liability Act); 43 U.S.C. § 1349(a) (Submerged Lands Act); 49 App.U.S.C. § 2014(a) (Hazardous Liquid Pipeline Safety Act). *See also, Chesapeake Bay Found. v. Bethlehem Steel Corp.,* 652 F.Supp. 620, 626 (D.Md.1987) (upholding constitutionality of citizen suit provision of Clean Water Act); *Student Public Inter-*

ruling was based solely on the defendant's standing to sue, not on the constitutionality of citizen suit provisions. I will not be the first court to hold these provisions unconstitutional. They are not.

### 2. Executive Power

■ The defendant alleges that Congress impermissibly transferred executive authority to the judiciary, through private citizen suits. While Congress may not entrust executive powers to persons over whom it exercises control, *see Bowsher v. Synar*, 478 U.S. 714, 733–34, 106 S.Ct. 3181, 3191–92, 92 L.Ed.2d 583 (1986), private litigants are not controlled by Congress. *Chesapeake Bay Found. v. Bethlehem Steel Corp.*, 652 F.Supp. 620, 624 (D.Md.1987). Further, "[s]tatutory rights and obligations are established by Congress and it is entirely appropriate for Congress, in creating these rights and obligations, to determine in addition who may enforce them and in what manner." *Davis v. Passman*, 442 U.S. 228, 241, 99 S.Ct. 2264, 2275, 60 L.Ed.2d 846 (1979). Therefore, citizen suits are not an unlawful delegation of executive power, since Congress in enacting the EPCRA did not grant to a person or persons under its control executive power.[5]

In addition, the executive branch retains the authority to commence action against alleged violators via the 60 day notice provision of the EPCRA. If the EPA chooses to commence either administrative or civil action within that period, the prospective plaintiff is barred from bringing its action. 42 U.S.C. § 11046(e). Further, if the EPA chooses not to pursue an action within the 60 day notice period, it may "as a matter of right" intervene at any time in any ongoing action. 42 U.S.C. § 11046(h)(1).

### B. *Unconstitutional as applied*

■ The defendant argues that the EPCRA is unconstitutional as applied, even if the statute itself is constitutional. The de-

fendant argues the plaintiffs cannot maintain their action because they seek only payments of civil penalties to the United States Treasury and because all of the alleged violations have been cured.

First, the defendant argues that only the EPA can originate fine determinations, and that the plaintiffs cannot use the courts to usurp the EPA's role. However, Congress assigned to the courts the job of fine determination when the EPA fails to pursue violators of the EPCRA. "The lack of standards to guide the judiciary in deciding *how much* to fine is merely indicative of a congressional judgment that the judiciary has the greatest competence to made such determinations." *Student Public Interest Research Group of New Jersey v. Monsanto Co.*, 600 F.Supp. 1474, 1479 (D.N.J.1985) (emphasis in the original). This is not an unlawful delegation of executive authority and it does not violate separation of powers doctrine. Courts make these kinds of determinations on a regular basis (ex. criminal sentencing fine determinations). *See id.* The fact that the EPCRA makes any fine assessed payable to the Treasury of the United States does not affect the *constitutionality* of citizen suits. *See id.* at 1478.

Second, the defendant claims the case was moot at the time of filing, because when the plaintiffs filed their complaint in October, 1992, the defendant had been in compliance with the EPCRA's requirements for nearly two months. However, if wholly past violations are actionable, the issue is not moot.

### C. *Plaintiffs' standing*

■ Article III limits the jurisdiction of the federal courts to "Cases" and "Controversies." This case or controversy limitation is embodied in the doctrine of standing to identify those disputes which are appropriately resolved through the judicial process. *Whitmore v. Arkansas*, 495 U.S.

---

*est Research Group of New Jersey v. Monsanto Co.*, 600 F.Supp. 1474, 1478 (D.N.J.1985) (same).

**5.** Any citizen does not necessarily have standing to bring suit in federal court simply because a citizen suit provision authorizing that person to

sue is constitutional. Article III standing requirements always are a prerequisite to a federal forum. *See Muskrat v. United States*, 219 U.S. 346, 348, 31 S.Ct. 250, 250, 55 L.Ed. 246 (1911).

149, 155, 110 S.Ct. 1717, 1722–23, 109 L.Ed.2d 135 (1990); *Lujan*, —— U.S. at ——, 112 S.Ct. at 2136 ("the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III").

■ The irreducible constitutional minimum set of requirements for standing contains three elements:

1. the plaintiff must have suffered an "injury in fact"—an invasion of a legally-protected interest [6] which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; [7]

2. there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly traceable" to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and

3. it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.[8]

*Lujan*, —— U.S. at ——, 112 S.Ct. at 2136.[9] The plaintiffs have the burden of establishing these three elements as a prerequisite to federal jurisdiction. *Id.*

### 1. Injury in fact

■ At the pleading stage "general factual allegations of injury resulting from the defendant's conduct" may suffice to withstand a motion to dismiss. *Lujan*, —— U.S. at ——, 112 S.Ct. at 2137. Standing cannot be inferred, however, but must affirmatively appear in the record. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990).

■ Although DVTC and PHILAPOSH both are organizations with long histories of interest in environmental issues in the Philadelphia area, this alone does not suffice to give them standing. *See Sierra Club v. Morton*, 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972). The plaintiffs must show how they themselves have been adversely affected. *Id.* at 740, 92 S.Ct. at 1368–69.

■ Under 42 U.S.C. Section 11046(a)(1), Congress granted authority to groups like the plaintiffs to commence citizen suits against owners or operators of facilities who fail to comply with EPCRA requirements. While successful litigants under section 11046(a) do not receive "bounties," they may recover the "costs of litigation," including reasonable attorney and expert witness fees. 42 U.S.C. § 11046(f). Nevertheless, section 11046(a) only grants citizens the right to sue for violations of 42 U.S.C. § 11023(a), it does not create a cognizable injury in fact. That injury must be found separately.

■ The type of injuries that are cognizable as injuries in fact may be derived from 42 U.S.C. § 11023(h). EPCRA states that release forms are intended to provide information to the public, including citizens of communities surrounding covered facilities. 42 U.S.C. § 11023(h). The purpose behind the EPCRA is defeated, when persons subject to the EPCRA requirements fail to file information regarding release of toxic chemicals to the environment. Specifically, this failure to file may inhibit the conduct of research and data gathering or the ability to aid in the development of appropriate regulations, guidelines, and standards. *See* 42 U.S.C. § 11023(h). Persons experiencing such a loss of informa-

---

**6.** "The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

**7.** *Compare Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2629–30, 57 L.Ed.2d 595 (1978) (plaintiff must have a "distinct and palpable injury").

**8.** *Compare Duke Power*, 438 U.S. at 75 n. 20, 98 S.Ct. at 7631 n. 20 (to satisfy the redressing of injury prong the plaintiff need only show "that

there is a 'substantial likelihood' that the relief requested will redress the injury claimed").

**9.** *Compare Duke Power*, 438 U.S. at 72, 98 S.Ct. at 2629–30 ("The essence of the standing inquiry is whether the parties seeking to involve the court's jurisdiction have alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.").

tion may be found to have suffered a concrete and particularized invasion of their legally-protected interests. *See Competitive Enter. Inst. v. NHTSA*, 901 F.2d 107, 122–23 (D.C.Cir.1990). This type of injury can be an actual or imminent injury-in-fact, and not merely a conjectural or hypothetical injury.

In contrast to *Lujan* where the Supreme Court held that the plaintiffs' injuries were too speculative to constitute an injury-in-fact, in the case at bar, the plaintiffs claim that the defendant's failure to file directly injured them. The plaintiffs allege that they were required to expend both time and money to discover the defendant's alleged violation. Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss, Ex. A at ¶ 21. Further, they assert that this reduced the time and efforts they had to disseminate information and to educate and train others regarding their programs. *See id.* at ¶ 22. In this case, the alleged violation of law and the alleged injury both occurred in the same state and city within the United States. Specifically, the plaintiffs claim that their members live, work and travel past or near the site of the alleged injury—the defendant's manufacturing plant. *Id.*, Ex. B, Moran Aff., and Ex. C., Meyers Aff. Moreover, Congress has with particularity enumerated both what constituted a violation of the law and what is the penalty for such violations.

The defendant asserts that the injury to the plaintiffs is only to their "informational interests"—they were deprived of the defendant's toxic release reports. It asserts that such injuries are not cognizable. However, "[a]llegations of injury to an organization's ability to disseminate information may be deemed sufficiently particular for standing purposes where that information is essential to the injured organization's activities, and where the lack of the information will render those activities infeasible." *Competitive Enter. Inst.*, 901 F.2d at 122. As opposed to cases in which standing was denied when the plaintiff's injury was alleged to have resulted indirectly from a government agency's action or inaction, the defendant here is a private party and the injury alleged is said to be solely caused by the defendant's action. Specifically, the plaintiffs allege that the defendant's failure to file reports in compliance with the EPCRA is the very action which caused the plaintiffs' injury. The *Foundation on Economic Trends v. Lyng*, 943 F.2d 79 (D.C.Cir.1991), case cited by the defendant for the proposition that the plaintiffs lack an injury in fact is distinguishable from the case at bar, because that court assumed that the plaintiffs *did* adequately allege an informational injury and therefore the court decided the case based on the Administrative Procedure Act (APA), 5 U.S.C. §§ 702–06, judicial review, which is not involved in this case. *Id.* at 85–87.

### 2. Fairly Traceable

■ In addition to having an injury in fact the plaintiffs must allege a link between the defendant's actions and any injury they have suffered. The defendant points out that at the time the complaint was filed, the plaintiffs were not deprived of any of the defendant's toxic chemical release information. However, if the plaintiffs were in fact injured by a failure of the defendant to comply with the EPCRA, the plaintiffs' injuries may be found to be fairly traceable to the defendant's alleged violation of the EPCRA, and not the result of the independent action of some third party not before the court.

### 3. Redressability

■ The defendant has already filed the Form R's for the years in dispute. Therefore, if the plaintiffs are successful in this suit, it would be pointless for this court to order the defendant to file Form R's for the years in which the defendant is alleged to be violations of the EPCRA. Nevertheless, the plaintiffs may still be able to obtain the declaratory judgments they seek. *See* Complaint ¶¶ 26–28. Additionally, the defendant may be ordered to pay a civil penalty for violating 42 U.S.C. § 11023. This fine could deter any future illegal conduct by the defendant. While this sum would be payable to the United States Treasury and not the plaintiffs, the

plaintiffs, if successful, may be awarded their "costs of litigation." In addition, the court may also order the defendant to cease future violations of the EPCRA. If successful, the plaintiffs' injuries may be redressed by either declaratory judgment, fining the defendant or enjoining it from committing future violations.

### D. Prudential limits

■ Even if the plaintiffs satisfy the Article III requirements for standing, the defendant argues that prudential limitations require the court decline to hear the merits of this case. I disagree. Congress has authorized persons like the plaintiffs to sue and the plaintiffs have satisfied the Article III case and controversy requirements. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975) ("Congress may grant an express right of action to person who otherwise would be barred by prudential standing rules. Of course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.").

### E. EPCRA jurisdiction for wholly past violations

■ The parties do not dispute the fact that at the time the plaintiffs' complaint was filed the defendant was no longer in violation of section 11023(a). Therefore, this action can be maintained only if 42 U.S.C. § 11046(a)(1) confers jurisdiction on this court for wholly past violations. This court concludes that 42 U.S.C. § 11046(a)(1) does provide the federal courts with jurisdiction for wholly past violations of the EPCRA. Citizen suits can be brought for past failures to comply with the EPCRA even if the defendant is in compliance with the Act at the time the complaint is filed. *See Williams v. Leybold Technologies, Inc.*, 784 F.Supp. 765 (N.D.Cal.1992); *Atlantic States Legal Found. v. Whiting*

*Roll–Up Door Mfg. Corp.*, 772 F.Supp. 745 (W.D.N.Y.1991).

*Gwaltney v. Chesapeake Bay Found.*, 484 U.S. 49, 58–59, 108 S.Ct. 376, 381–82, 98 L.Ed.2d 306 (1987), cited by the defendants, is distinguishable. *Atlantic States*, 772 F.Supp. at 752. The statutory language of the EPCRA and the Clean Water Act differ.

■ In addition, a sixty day notice requirement is not at odds with a provision that allows for suit for wholly past violations of the law. Congress has included a 60 day notice provision in an environmental statute even when it intends to authorize citizen suits for past violations. *See, e.g.*, 42 U.S.C. § 7604. For example, when Congress amended the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, to allow for citizen suits for past violations, it did not modify the 60 day notice provision of the Act. Clean Air Act, Amendments, Pub.L. No. 101–549, § 707(g), 104 Stat. 2399, 2683 (1990).

### F. Injunctive relief

■ The defendant also asserts that the plaintiffs cannot seek injunctive relief from the court to deter a future violation by the defendant. Since the EPCRA is only a reporting statute, in contrast to a past violation of other environmental laws which cause a continuing pollution problem, violations of the EPCRA cease when the information is filed with the appropriate authorities.[10]

The plaintiffs, however, may be able to prove that the defendant is sufficiently likely to commit future violations to warrant the issuance of an injunction. The defendant's plant manager's affidavit shows that the defendant failed to timely file the Form R's for the years 1987, 1989, 1990, and 1991.[11] Def. Motion to Dismiss, Ex. A. The defendant's attachment to its motion also suggests that the original 1988 Form R filed by the defendant may have

---

10. Although filing ends the statutory violation, it does not necessarily cause the immediate cessation of any injury caused by the violation.

11. The defendant's 1991 Form R was filed on August 28, 1992. Def. Motion, Ex. A, ¶ 11. The 1991 Form R filing is not directly in issue in this case.

contained inaccuracies. Def. Motion, Attach. 1.

### G. Inaccurate information

█ The defendant asserts that the plaintiffs' cannot bring a cause of action under EPCRA if the defendant merely filed an inaccurate Form R for the year 1988. It is undisputed that the defendant's 1988 Form R filed in 1989 differs from the revised Form R filed by the defendant on July 23, 1992.[12] At the pleading stages, the court role is not to weigh the significance of any such difference, but merely to determine if under any set of facts the plaintiffs can maintain their cause of action.

40 C.F.R. § 372.85(b)(2) requires that a senior management official certify that the information submitted on the Form R "is true and complete and that amounts and values in this report are accurate based upon reasonable estimates using the data available to the preparer of the report." If the originally filed 1988 Form R's were found not to be in compliance with this regulation, the defendant might be liable for a violation of section 11023(a). Congress required owners to submit accurate Form R's.[13] The purpose of citizen suits is to supplement the EPA's enforcement abilities because the EPA lacks sufficient resources to bring all necessary actions. *Chesapeake Bay Found.*, 652 F.Supp. at 625. A ruling that "knowing" failures to file accurate information with the EPA are not subject to rectification by citizen suits would defeat the purposes of citizen suits.

## IV. CERTIFICATION OF INTERLOCUTORY APPEAL

█ A grant of certification for interlocutory appeal is within the discretion of the district court. 28 U.S.C. § 1292(b) ("When a district judge ... shall be of the opinion"). Before the district court may certify a question for interlocutory appeal under 28 U.S.C. § 1292(b), three conditions must be met:

1. There must be a controlling question of law involved;

2. with respect to which there is substantial ground for difference of opinion; and

3. an immediate appeal from the order would materially advance the ultimate termination of the litigation.

Certification of interlocutory appeal, in this case, would delay rather than advance the ultimate termination of the litigation.

**12.** The following chart shows a comparison of the two Form R's for the year 1988 which were filed by the defendant.

| Chemical | 1988 original | 1988 revised |
|---|---|---|
| Methyl Ethyl Ketone | — | 293,100 |
| Methyl Isobutyl Ketone | 178,328 | 302,400 |
| Toluene | 178,328 | 610,300 |
| Xylene | — | 38,000 |
| Wash Solvent | 178,328 | 64,000 |
| Acetone | 178,328 | — |
| Methanol | 178,328 | — |
| TOTAL | 891,640 | 1,307,800 |

Complaint ¶ 22(d). The defendant states that its original Form R reported releasing 178,328 units of Methyl Ethyl Ketone, but no Wash Solvent in 1988. Motion of Kurz–Hastings, Inc. to Dismiss or in the Alternative for Summary Judgment, attach. 1. The revised Form R for 1988 reports releasing 64,500 units of Wash Solvent in 1988. *Id.* The defendant notes that the "Original 1988 submission did not contain estimates for fugitive emissions." *Id.*

**13.** Section 11046(a)(2) fails to provide state and local governments with an independent source of jurisdiction to pursue causes of action for violations of section 11023(a). State and local governments, however, are included within the statute's definition of "person." 42 U.S.C. 11049(7). Therefore, if "any person" is prevented from bringing a cause of action against a defendant for "knowingly" failing to file an ac-

curate Form R, then both state and local gov-　ernments are also so barred.