**ATLANTIC STATES LEGAL FOUNDATION, INC.,**
Plaintiff,

v.

**BUFFALO ENVELOPE, A DIVISION OF AMERICAN ENVELOPE CO.,**
Defendant.

**No. 90–CV–1110S.**

United States District Court,
W.D. New York.

March 31, 1993.

Charles M. Tebbutt, Allen Lippes & Shonn, Buffalo, NY, for plaintiff.

R. Williams Stephens, Raichle, Banning, Weiss & Stephens, Buffalo, NY, Richard R. Elledge, Gould & Ratner, Chicago, IL, for defendant.

## DECISION AND ORDER

SKRETNY, District Judge.

### *INTRODUCTION*

Presently before this Court is defendant's motion to dismiss this action for plaintiff's lack of standing to sue or, in the alternative, because the statute under which this action is brought is unconstitutional.

This lawsuit is a citizen's enforcement action arising under the Emergency Planning and Community Right–To–Know Act ("EPCRA"), 42 U.S.C. § 11001 *et seq.*[1] Plaintiff alleges that defendant has failed timely to submit certain hazardous chemical information to the proper state and federal authorities pursuant to § 313 of EPCRA, 42 U.S.C. § 11023, for the 1987 and 1988 reporting years.

Plaintiff seeks the following relief: 1) a declaratory judgment regarding defendant's liability for failure to comply with the reporting requirements of EPCRA; 2) civil penalties for violations of § 313 for the 1987 and

---

**1.** Enacted in 1986, EPCRA is Title III of the Superfund Amendments and Reauthorization Act ("SARA"), Pub.L. No. 99–499, 100 Stat. 1613.

1988 reporting years; 3) an order of this Court authorizing plaintiff to inspect defendant's records for EPCRA compliance; 4) an order of this Court requiring defendant to provide plaintiff copies of materials that defendant submits to the United States Environmental Protection Agency ("EPA"); and 5) attorneys' fees and costs.

By a Decision and Order entered on September 10, 1991 this Court denied defendant's previous motion to dismiss plaintiff's Complaint for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1). The relevant facts of this case are fully set forth therein, and will not be repeated here. Familiarity with that Decision and Order is presumed.

In connection with the present motion to dismiss, defendant argues that plaintiff lacks standing to sue under EPCRA because it has failed to allege a personal injury fairly traceable to defendant's conduct that is redressable by the requested relief. See *Valley Forge Christian College v. Americans United,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). In the alternative, defendant argues that the citizen enforcement provisions of EPCRA are unconstitutional because they violate the principle of the separation of powers, and because the statute's filing requirements violate the Fifth Amendment Due Process Clause.

In support of its motion, defendant has submitted a Brief of Defendant in Support of its Claim that Plaintiff Lacks Standing to Sue ("D.Brief"); a Memorandum of Law Regarding Claims of Unconstitutionality ("D.Memo"); and a Reply Brief ("D.Reply").

In opposition to defendant's motion, plaintiff has submitted a Memorandum in Support of its Standing to Sue under EPCRA and in Opposition to Defendant's Position ("P. Standing Memo."); a Memorandum of Law in Support of the Constitutionality of the Emergency Planning and Community Right-to-Know Act ("P. Const.Memo."); the Affidavit of James P. Keane ("Keane Affid."); the Affidavit of Lester W. Milbrath ("Milbrath Affid."); and the Affidavit of Karen C. Murphy ("Murphy Affid.").

In ruling on defendant's motion, this Court has considered all these submissions, as well as oral argument held on May 15, 1992.

For the reasons set forth below, this Court will deny defendant's motion to dismiss plaintiff's Complaint.

## DISCUSSION

### I. *Standing*

Defendant argues that plaintiff lacks standing to maintain this action. It argues that the only injury that plaintiff has alleged is "conjectural and abstract disaffection with defendant's alleged violation" of EPCRA (D.Brief, p. 3). On the other hand, plaintiff argues that EPCRA has conferred standing on a broad class of individuals, and that plaintiff and its members have been injured by defendant's failure timely to file the information required by the statute. Specifically, plaintiff argues that defendant has infringed upon its members' "right to know" about the presence of toxic chemicals at or near defendant's facility (P. Standing Memo, p. 4).

Congress has not expressly limited the class of persons who can bring citizen suits under EPCRA. 42 U.S.C. § 11049(7). As will be developed below, "[s]tatutory rights and obligations are established by Congress, and it is entirely appropriate for Congress, in creating these rights and obligations, to determine in addition who may enforce them and in what manner." *Davis v. Passman,* 442 U.S. 228, 241, 99 S.Ct. 2264, 2275, 60 L.Ed.2d 846 (1979). Nonetheless, standing is, as always, a prerequisite to a federal forum. *Muskrat v. United States,* 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911).

A three-pronged test for standing has been articulated by the Supreme Court. To have standing: (1) plaintiff must suffer a personal injury; (2) the injury must be fairly traceable to the defendant's conduct; and (3) the injury must likely be redressable by the requested relief. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472–73, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982). The Second Circuit has expounded on this standard, explaining that plaintiff's injury must be "concrete in nature and par-

ticularized to them." *In Re Catholic Conference,* 885 F.2d 1020, 1023 (2d Cir.1989). The plaintiffs have the burden of establishing all three elements listed above. *Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

### A. *Injury*

■ The right that the statute was intended to protect is essentially a "right to know." The statute provides:

> The release forms required under this section are intended to provide information to the Federal, State, and local governments and the public, including citizens of communities surrounding covered facilities. The release form shall be available, consistent with section 11044(a) of this title, to inform persons about releases of toxic chemicals to the environment; to assist governmental agencies, researchers, and other persons in the conduct of research and data gathering; to aid in the development of appropriate regulations, guidelines, and standards; and for other similar purposes.

42 U.S.C. § 11023(h). The introductory statement contained in H.REP. NO. 99–253 to accompany H.R. 2817, which was largely adopted by H.R. 2005, the bill ultimately passed by Congress, states:

### COMMUNITY RIGHT TO KNOW

A program is established that will provide the public with important information on the hazardous chemicals in their communities. The program would require each owner or operator of a facility at which a hazardous chemical is produced, used, or stored to supply information on material safety data sheets (MSDS) about each hazardous chemical to state and local officials. The state and local officials, designated by the governor of each state, would make this information available to the public. HOUSE COMMITTEE ON ENERGY AND COMMERCE, SUPERFUND AMENDMENTS OF 1986, H.REP. NO. 253, 99th Cong., 2d Sess. (1986) *reprinted in* 1986 U.S.C.C.A.N. 2835, 2841. Similarly, the preamble to the Conference report describes the Senate and House versions of EPCRA as

... programs to provide the public with important information on the hazardous chemicals in their communities, and to establish emergency planning and notification requirements which would protect the public in the event of a release of hazardous chemicals.

H.REP. NO. 962, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 3276. Therefore, to have standing to sue, plaintiff must have been injured by the lack of information that resulted from defendant's failure timely to file the reports required by the statute.

In *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) an environmental organization sought declaratory and injunctive relief against the Secretary of the Interior due to the proposed construction of recreational facilities in a semi-wilderness park. The organization alleged that construction of the park "would destroy or otherwise adversely affect the scenery, natural and historic objects and wildlife of the park and would impair enjoyment of the park for future generations." *Id.* at 734, 92 S.Ct. at 1365. The Supreme Court explained that this type of injury was cognizable under the Administrative Procedure Act, 5 U.S.C. § 702. Nonetheless, the Court held that the organization did not have standing to sue. The organization had not shown injury in fact because it failed to allege that it or any of its members used the park or would be affected in any way by the construction of the recreational facilities. "The *Morton* Court recognized that an organization whose members were injured could sue on their behalf; but it ruled that an organization whose members were not injured but merely interested could not...." *Sierra Club v. SCM Corp.,* 747 F.2d 99, 104 (2d Cir.1984). The *Morton* Court wrote:

> [A] mere "interest in a problem," no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization "adversely affected" or "aggrieved" within the meaning of the APA. The Sierra Club is a large and long-established organization, with a historic commitment to the cause of

protecting our Nation's natural heritage from man's depredations. But if a "special interest" in this subject were enough to entitle the Sierra Club to commence this litigation, there would appear to be no objective basis upon which to disallow a suit by any other bona fide "special interest" organization, however small or short-lived. And if any group with a bona fide "special interest" could initiate such litigation, it is difficult to perceive why any individual citizen with the same bona fide special interest would not also be entitled to do so.

*Id.* at 739–40, 92 S.Ct. at 1368–69 (footnotes omitted).

Similarly, in *Sierra Club v. SCM Corp.*, 747 F.2d 99 (1984), the Second Circuit held that the organization lacked standing to bring suit for violations of the Clean Water Act. The court wrote, "Accordingly, we conclude that Sierra could establish standing under [the Act] only by showing actual injury within the meaning of *Morton,* by, for example, providing a concrete indication that Sierra or one or more of its members used the [polluted tributary] or would be affected by its pollution.... Here, as in *Morton,* '[t]he Club apparently regard[s] any allegations of individualized injury as superfluous....'" *Id.* 747 F.2d at 107 (quoting *Morton,* 405 U.S. at 736, 92 S.Ct. at 1367).

In this case, plaintiff has alleged and shown individualized injury. Furthermore, the injury is of the type that EPCRA was intended to redress. Plaintiff has alleged the following in its Complaint:

6. Plaintiff, Atlantic States Legal Foundation, Inc. (ASLF) sues on behalf of both itself and its members. ASLF is a Not-for-Profit Corporation organized under the laws of the State of New York, with its principal place of business in Syracuse, New York. ASLF is a membership organization with members in Erie County and throughout the United States and Puerto Rico. ASLF is dedicated to protecting and restoring the natural resources of the United States and its territories. To this end, ASLF engages in activities designed to increase the public's awareness of the impact of human endeavors upon the natural environment and to further the public's understanding of the need of people to live within the natural environment without destroying its ecology.

7. Members of ASLF reside in Orchard Park, New York or Erie County in the vicinity of, or own property or recreate near, the Defendant's facility. The safety, health, recreational, economic, aesthetic, and environmental interests of ASLF's members have been, are being, and will be adversely affected by Defendant's violations of the terms and conditions of § 313 of the Act, 42 U.S.C. 11023.

\* \* \* \* \* \*

11. Section 313 of the Act, 42 U.S.C. 11023, requires facilities in Standard Industrial Codes 20–39 with ten or more full-time employees, and other specifically designated facilities, to establish and maintain records concerning the chemicals required to be reported and to report beginning on July 1, 1988, and on an annual basis thereafter, to the Environmental Protection Agency (EPA) and the New York State Department of Environmental Conservation (DEC) regarding the facilities' release of pollutants covered under § 313. The reports consist of Toxic Chemical Release Inventory Reporting Forms (EPA Form R).

12. Section 313, through the standard EPA Form Rs published pursuant to § 313(g), requires covered facilities to report releases of covered toxic chemicals to all environmental media, i.e., air, land and water. A list of regulated substances is set forth at 40 C.F.R. 372.65.

13. Defendant failed to timely submit EPA Form Rs on July 1, 1988 and July 1, 1989 for the years of 1987 and 1988, respectively. The failure of Defendant to submit these forms by the times required violates § 313 of the Act, 42 U.S.C. 11023.

\* \* \* \* \* \*

16. Defendant's failure to timely complete and submit the EPA Form Rs as required has prevented the Federal, State and local governments, as well as the people of the communities surrounding the Defendant's facility, from knowing of the toxic chemi-

cals used and released from Defendant's facility. Such failure by Defendant subverts the purposes of the Act, including §§ 313(h) and (*l*), and 324(a), 42 U.S.C. 11023(h) and (*l*) and 11044(a), respectively.

Moreover, plaintiff has introduced affidavits from some of its members who live or work near defendant's facility. These affidavits indicate that plaintiff's members have suffered individualized injury. Plaintiff has submitted the affidavit of James P. Keane, who is Commissioner of the Department of Emergency Services for Erie County (Keane Affid., ¶ 4). Keane states that in both his professional and personal capacities he is concerned about the health and safety of himself, his family, and his community (Keane Affid., ¶ 4). The information required to be filed by EPCRA is alleged to be critical to his duties of preparing response plans to address potential chemical accidents (Keane Affid., ¶ 5). The failure of defendant to provide the required information has allegedly "prevented [him] from fully performing the duties imposed upon Erie County and the State of New York by EPCRA" (Keane Affid., ¶ 6). Keane alleges that his employment requires him to provide information required to be provided under EPCRA to the public. He states, "Because Whiting did not provide the information in a timely manner, my office was unable to provide the information requested on Whiting's facility" (Keane Affid., ¶ 7). Keane also states, "The defendant's failure to provide the information required under EPCRA has harmed my abilities to perform my professional duties as well as compromised the safety of my family, myself and the people of the community. In addition, my personal interest in knowing what chemicals are being released into the environment has been adversely impacted" (Keane Affid., ¶ 8).

Plaintiff has submitted the affidavit of Lester W. Milbrath, another member. Milbrath is a resident of Erie County, and a professor of environmental politics at the State University of New York at Buffalo (Milbrath Affid., ¶ 1). He states that "full compliance with [EPCRA] will help protect my safety and health concerning exposures to hazardous chemicals and also to protect my health and safety from the possibility of chemical accidents" (Milbrath Affid., ¶ 3). He alleges that defendant's failure to submit the required information has hampered the ability of the State and County to prepare an emergency response plan to protect his safety (Milbrath Affid., ¶ 4). He further alleges that defendant's failure to provide the information has violated his right to know about the chemicals used at and released from facilities in his community (Milbrath Affid., ¶¶ 5 and 7). Finally, he alleges that he frequently travels near defendant's facility, and that the lack of knowledge regarding toxic chemicals used by defendant puts him at risk (Milbrath Affid., ¶ 6).

Plaintiff has also submitted the affidavit of Karen C. Murphy. She is a resident of Buffalo, New York. Murphy alleges that defendant's failure to comply with EPCRA has violated her right to learn who the polluters are in the area in which she lives (Murphy Affid., ¶ 2). She alleges that defendant's failure to file the required information gives her a false impression of the extent of contamination in her community; without a realistic impression, she cannot make informed decisions about her future and the future of her family, including a decision about where to live (Murphy Affid., ¶ 2). Murphy has frequently travelled near defendant's facility. Without full disclosure of the toxic chemicals used and released from the facility, she believes her safety is not being adequately protected because disaster planning agencies are without critical information (Murphy Affid., ¶ 3). Furthermore, she alleges that her employment has required her to compile an inventory of companies in the Western New York area that release toxic chemicals. She has relied upon the reports that are required to be submitted by EPCRA (Murphy Affid., ¶ 4). She states, "I have used the Section 313 database for many types of environmental information. When companies such as Buffalo Envelope Company fail to file at all or file information well after the statutory deadlines, I am deprived of that information" (Murphy Affid., ¶ 6). She alleges that she relies upon EPCRA filings in other aspects of her employment, and that defendant's failure to file timely has deprived her of "invaluable information" (Murphy Affid., ¶ 8).

Therefore, plaintiff has not made the mistake of "regard[ing] any allegations of individualized injury as superfluous...." *Morton*, 405 U.S. at 736, 92 S.Ct. at 1367. It has submitted affidavits showing the types of individualized injury that has allegedly inured to members of plaintiff organization as a result of defendant's failure to file the information required by EPCRA in a timely fashion. The injury shown is "concrete in nature and particularized to them." *In Re Catholic Conference*, 885 F.2d at 1023. Furthermore, it is precisely the type of injury that EPCRA is supposed to redress. As the court wrote in *Delaware Valley Toxics Coalition v. Kurz–Hastings, Inc.*, 813 F.Supp. 1132 (E.D.Pa.1993):

> The type of injuries that are cognizable as injuries in fact may be derived from 42 U.S.C. § 11023(h). EPCRA states that release forms are intended to provide information to the public, including citizens of communities surrounding covered facilities. 42 U.S.C. § 11023(h). The purpose behind the EPCRA is defeated, when persons subject to the EPCRA requirements fail to file information regarding release of toxic chemicals to the environment. Specifically, this failure to file may inhibit the conduct of research and data gathering or the ability to aid in the development of appropriate regulations, guidelines, and standards. *See* 42 U.S.C. § 11023(h). Persons experiencing such a loss of information may be found to have suffered a concrete and particularized invasion of their legally-protected interests. *See Competitive Enter. v. NHTSA*, 901 F.2d 107, 122–23 (D.C.Cir.1990).

*Id.* 813 F.Supp. at 1139.

In *Sierra Club v. Simkins Industries, Inc.*, 847 F.2d 1109 (4th Cir.1988), *cert. denied*, 491 U.S. 904, 109 S.Ct. 3185, 105 L.Ed.2d 694 (1989), the Fourth Circuit held that the plaintiff had standing to sue under the Clean Water Act where it alleged that it had been injured by defendant's failure to file environmental reports. The plaintiff alleged that its members were injured by the defendant's reporting violations because they were unable to know the full extent of pollution in waterways near which they lived. The plaintiff submitted an affidavit from one of its members attesting to his interest, as one regularly using the waterways, in preserving the environmental quality of the area. The court explained that the affidavit was sufficiently specific to allege injury for the purpose of determining standing, *id.* 847 F.2d at 1112 n. 3, and held that the affidavit "adequately establish[ed] injury and the threat of future injury, stemming from [ ] [the defendant's] failure to report concerning harmful effluents...." *Id.* 847 F.2d at 1113. See also *Public Interest Research Group of New Jersey v. Magnesium Elecktron, Inc.*, 22 Envtl.L.Rep. 20362, 1992 WL 16314 (D.N.J. 1992).

Likewise, plaintiff in the present case has made a sufficient showing that its members have been adversely affected by defendant's late reporting, and this Court holds that plaintiff has thereby established standing to sue under EPCRA.

The case of *Foundation on Economic Trends v. Lyng*, 943 F.2d 79 (D.C.Cir.1991), relied upon by defendant, does not change this Court's conclusion. Although defendant cites *Lyng* for the proposition that the "U.S. Court of Appeals, District of Columbia Circuit has retreated from any holdings that recognize 'informational standing'" (D.Brief, p. 7 n. 7), *Lyng* does not hold or state in dictum that standing cannot be founded upon an "informational" injury. Furthermore, the result in *Lyng* did not depend upon this issue; the court expressly assumed that the plaintiff had adequately alleged injury through the deprivation of information, and the court proceeded to decide the case based upon the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 702–706. See also *Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

For these reasons, this Court finds that plaintiff and its members have alleged injury sufficient to confer standing under EPCRA.

### B. *Traceability*

In addition to alleging an injury under EPCRA, plaintiff has established that its injury "fairly can be traced to the challenged action...." *Valley Forge*, 454 U.S. at 472,

102 S.Ct. at 758. Defendant has failed timely to file the information required by EPCRA, and there is a direct causal relationship between this failure and the injuries alleged by plaintiff's members, i.e., a lack of knowledge about toxic chemical use in their area, and interference with their employment duties, such as disaster planning and compiling inventories of toxic chemical users.

### C. *Redressability*

Finally, plaintiff has established that its injury is "likely to be redressed by a favorable decision" on the merits. *Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758. Although defendant argues that it filed the required reports before plaintiff filed its Complaint, plaintiff may still be entitled to important relief. For example, plaintiff might obtain a declaratory judgment against defendant. Furthermore, plaintiff is seeking injunctive relief to prevent future violations of EPCRA. Finally, plaintiff is seeking a civil penalty payable to the United States Treasury. A fine may deter defendant from failing timely to file the required information in the future. "[T]he judicial relief of civil penalties, even if payable only to the [Treasury] is causally connected to a citizen-plaintiff's injury. Such penalties can be an important deterrence against future violations." *Simkins*, 847 F.2d at 1113.

Because plaintiff has shown a direct injury, fairly traceable to defendant's conduct, and likely to be redressed by the relief requested, this Court holds that plaintiff has standing to sue under EPCRA. A similar result was recently reached on similar facts by the Eastern District of Pennsylvania in the *Delaware Valley* case cited above. To the extent that the reasoning in *Delaware Valley* is consistent with the principles expressed above, this Court adopts *Delaware Valley* as further support for this Court's conclusion that plaintiff in the present case has standing to sue.

### II. *The Constitutionality of the Statute*

### A. *Citizen Suit Provision*

Plaintiff has brought this action under the citizen suit provision of EPCRA, 42 U.S.C. § 11046, which provides in pertinent part:

**(a) Authority to bring civil actions**

**(1) Citizen suits**

Except as provided in subsection (e) of this section, any person may commence a civil action on his own behalf against the following:

(A) An owner or operator of a facility for failure to do any of the following:

(i) Submit a follow-up emergency notice under section 11004(c) of this title.

(ii) Submit a material safety data sheet or a list under section 11021(a) of this title.

(iii) Complete and submit an inventory form under section 11022(a) of this title containing tier I information as described in section 11022(d)(1) of this title unless such requirement does not apply by reason of the second sentence of section 11022(a)(2) of this title.

(iv) Complete and submit a toxic chemical release form under section 11023(a) of this title....

These provisions must be read in conjunction with 42 U.S.C. § 11046(d), (e) and (h), which provide:

**(d) Notice**

(1) No action may be commenced under subsection (a)(1)(A) of this section prior to 60 days after the plaintiff has given notice of the alleged violation to the Administrator, the State in which the alleged violation occurs, and the alleged violator. Notice under this paragraph shall be given in such manner as the Administrator shall prescribe by regulation....

**(e) Limitation**

No action may be commenced under subsection (a) of this section against an owner or operator of a facility if the Administrator has commenced and is diligently pursuing an administrative order or civil action to enforce the requirement concerned or to impose a civil penalty under this chapter with respect to the violation of the requirement....

**(h) Intervention**

**(1) By the United States**

In any action under this section the United States or the State, or both, if not a party, may intervene as a matter of right.

Under the statute, a "person" is defined as "any individual, trust, firm, joint stock company, corporation (including a government corporation), partnership, association, State, municipality, commission, political subdivision of a State, or interstate body." 42 U.S.C. § 11049(7). The term "Administrator" refers to the Administrator of the Environmental Protection Agency ("EPA"). 42 U.S.C. § 11049(1).

Defendant argues that the citizen suit provision in EPCRA violates the separation of powers principle and the Appointments Clause of the Constitution by granting to private individuals powers that are vested exclusively in the Executive Branch. By permitting plaintiff, a private organization, to seek a civil penalty to be paid into the United States Treasury, the statute would allow plaintiff to vindicate a public right, which, defendant argues, should only be done by the Administrator, who serves at the pleasure of the President.

Article II, § 1, cl. 1 of the United States Constitution provides: "The executive Power shall be vested in a President of the United States of America." The Appointments Clause of Article II reads as follows:

[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law; but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. CONST., Art. II, § 2, cl. 2.

Adherence to these provisions maintains the separation of powers, about which James Madison wrote, "No political truth is certainly of greater intrinsic value, or is stamped with the authority of more enlightened pa-

trons of liberty." The Federalist, No. 47, p. 301 (C. Rossiter ed.1961) (hereinafter "Federalist"). But to state that the principle of the separation of powers must be maintained does not answer the present question, that is, over whom does the principle extend? Defendant seeks to extend the principle over private individuals who are given authority by EPCRA to undertake executive-type functions in the area of environmental reporting. On the other hand, plaintiff argues that the principle does not extend over private parties, but only over those who are members of the three departments of government: the legislative, the executive, and the judicial. This Court believes that the latter argument is correct.

The Framers of the Constitution appear to have understood the separation of powers as a principle that applies to inter-branch relationships within the government itself. Madison wrote, "[T]he great security against a gradual concentration of the several powers in the same department consists in giving to those who administer each department the necessary constitutional means and personal motives to resist encroachments of the others." Federalist No. 51, pp. 321–22. Thus the system of separated powers and checks and balances established in the Constitution was regarded by the Framers as "a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other." *Morrison v. Olson,* 487 U.S. 654, 693, 108 S.Ct. 2597, 2620, 101 L.Ed.2d 569 (1988) (quoting *Buckley v. Valeo,* 424 U.S. 1, 122, 96 S.Ct. 612, 684 (1976)).

■ It must also be understood that "[s]tatutory rights and obligations are established by Congress, and it is entirely appropriate for Congress, in creating these rights and obligations, to determine in addition who may enforce them and in what manner." *Davis v. Passman,* 442 U.S. 228, 241, 99 S.Ct. 2264, 2275, 60 L.Ed.2d 846 (1979). This is not only consistent with the separation of powers; it is fundamental to the principle. Congress may expand or limit the scope of the statutory rights it creates, and may determine who will vindicate those rights. A constitutional concern arises only where Congress has reserved unto itself the right to

control or supervise the enforcement of the rights it created. See *INS v. Chadha*, 462 U.S. 919, 958, 103 S.Ct. 2764, 2777, 77 L.Ed.2d 317 (1983). Consequently, Congress has created a host of statutory rights, and has often provided for concurrent enforcement by executive branch agencies and private citizens.[2]

■ For example, the enforcement provisions in § 505 of the Clean Water Act, 33 U.S.C. § 1365, are similar to those in EP-CRA. The Clean Water Act authorizes a private citizen to bring suit against violators, seeking civil penalties payable to the United States Treasury. The Act requires that the citizen give 60 days notice to the Administrator, the State, and the alleged violator; that the citizen may not commence suit if the Administrator is pursuing enforcement; and that the Administrator may intervene as a matter of right. These provisions parallel EPCRA's citizen suit provisions.

In *Chesapeake Bay Foundation v. Bethlehem Steel Corp.*, 652 F.Supp. 620 (D.Md. 1987), a private party brought suit against an alleged violator under the Clean Water Act. The defendant argued that the citizen suit provision in the Act violated the separation of powers by granting enforcement powers to those not in the executive branch. The court rejected that argument, writing:

> This reasoning is fundamentally flawed. First, defendant bases its argument on two Supreme Court cases which address separation of powers vis-a-vis Congress and the Executive. Second, defendant ignores the principal that Congress creates statutory rights and obligations, and it determines who may enforce them and in what manner.

*Id.* at 623. In *Chesapeake Bay*, the defendant relied upon *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) and *Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986), two of the cases relied upon by defendant in the present case.

*Buckley* involved a constitutional challenge to the composition of the Federal Election Committee, which was established by Congress to administer and enforce the Federal Election Campaign Act, 2 U.S.C. § 431 *et seq.* (1972). The Act gave the Committee investigatory, rulemaking, and enforcement powers. Two of the members of the Committee were members of Congress, four were appointed by Congress, and the remaining two were appointed by the President. Because four of the six Committee members were appointed by or members of Congress, the Supreme Court determined that the scheme violated the principle of the separation of powers. The Court wrote;

> We hold that these provisions of the Act, vesting in the Commission primary responsibility for conducting civil litigation in the courts of the United States for vindicating public rights, violate Art. II, § 2, cl. 2 of the Constitution. Such functions may be discharged only by persons who are "Officers of the United States" within the language of that section.

*Buckley*, 424 U.S. at 140, 96 S.Ct. at 692.

What defendant in the present case fails to recognize, and what the *Chesapeake Bay* court emphasized, is that in *Buckley* the Supreme Court spoke of the separation of powers with reference to the three branches of the federal government. The Court wrote, "[T]he legislative branch may not exercise executive authority by retaining the power to appoint those who will execute its laws." *Buckley*, 424 U.S. at 119, 96 S.Ct. at 681. "The Framers regarded the checks and balances that they had built into the tripartite Federal Government as a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other." *Id.* at 122, 96 S.Ct. at 684. Therefore, the court in *Chesapeake Bay* wrote that *Buckley* "does not stand for the proposition, as defendant would have this

---

2. See, e.g., Clean Water Act § 505, 33 U.S.C. § 1365, Clean Air Act § 304, 42 U.S.C. § 7604, Marine Protection, Research, and Sanctuaries Act § 105(g), 33 U.S.C. § 1415(g); Noise Control Act § 12, 42 U.S.C. § 4911; Endangered Species Act § 11(g), 16 U.S.C. § 1540(g); Deepwater Port Act § 16, 33 U.S.C. § 1515; Resource Conservation and Recovery Act § 7002, 42 U.S.C. § 6972; Toxic Substances Control Act § 20, 15 U.S.C. § 2619; Safe Drinking Water Act § 1449, 42 U.S.C. § 300j–8; Surface Mining Control and Reclamation Act § 520, 30 U.S.C. § 1270; and Outer Continental Shelf Lands Act § 23, 43 U.S.C. § 1349(a).

Court believe, that private persons may not enforce any federal laws simply because they are not Officers of the United States appointed in accordance with Article II of the Constitution." *Chesapeake Bay,* 652 F.Supp. at 624.

In *Bowsher,* the Supreme Court invalidated a provision of the Gramm–Rudman–Hollings Act, which gave the Comptroller General important budget-reduction powers. The Court wrote:

> By placing the responsibility for execution of the Balanced Budget and Emergency Deficit Control Act in the hands of an officer who is subject to removal only by itself, Congress in effect has retained control over the execution of the Act and has intruded into the executive function. The Constitution does not permit such intrusion.

*Bowsher,* 478 U.S. at 734, 106 S.Ct. at 3191–92. Again, the Supreme Court spoke of the separation of powers with reference to the three branches of government. Therefore, the *Chesapeake Bay* court wrote, "Private litigants, however, are hardly controlled by Congress. Consequently, the [*Bowsher*] decision lends no support to defendant's argument." *Chesapeake Bay,* 652 F.Supp. at 624.

Defendant in the present case also relies on *INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). In *Chadha,* the Supreme Court struck down a one-House "legislative veto" provision by which each House of Congress had the power to reverse the Attorney General's decisions regarding the deportation of aliens. Once again, the Supreme Court described the separation of powers with reference to the three branches of government, and wrote that "[t]he hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted." *Id.* at 951, 103 S.Ct. at 2784. Thus, "where [defendant's] argument derails is in its exclusive reliance on cases that have interpreted the separation of powers requirement *as between branches of*

*government.*" *Natural Resources Defense Council v. Outboard Marine Corp.,* 692 F.Supp. 801, 815 (N.D.Ill.1988) (upholding citizen suit provisions in the Clean Water Act). See also *Student Public Interest Research Group v. Monsanto Co.,* 600 F.Supp. 1479 (1985) (same); *Atlantic States Legal Foundation v. Universal Tool,* 735 F.Supp. 1404 (N.D.Ill.1990) (same).

Under EPCRA, Congress has not retained discretion or supervision over the enforcement of its legislation. It has granted a concurrent right to enforce the statute to the Administrator and to private individuals who are aggrieved by violations of the statute.[3] The fact that the monetary penalties sought are payable to the Treasury rather than to the private individual is of no moment. Such penalties redress the injuries of private parties whose interests are met through compliance with EPCRA's reporting requirements. The civil fine provisions are designed to effect compliance through general and specific deterrence. Thus the court in *Monsanto,* which was presented with a similar issue under the Clean Water Act, wrote:

> ... [T]he argument that Congress has granted citizens the power to protect more than just their own interests is a protest against the liberal standing requirement in another guise, and merely seeks to narrow the type of interests citizens may seek to protect.

*Monsanto,* 600 F.Supp. at 1479. It must not be forgotten that the statutory rights conferred upon private citizens under EPCRA are limited to those who have standing under Article III of the Constitution. *Muskrat v. United States,* 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911); *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987).

Even more persuasive than the numerous statutes containing citizen suit provisions, and the numerous district court decisions upholding such provisions are the Supreme Court decisions that, although not specifically

---

**3.** The Supreme Court has also noted the constitutionality of *"qui tam"* statutes, whereby private individuals, or "informers", may bring suit for violations against the United States. In such actions, a monetary penalty is typically sought, with a portion of the money being paid into the United States Treasury. *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). See also *U.S. ex rel. Doe v. John Doe Corp.,* 960 F.2d 318 (2d Cir.1992).

addressing the constitutionality of these provisions under the separation of powers principle, decide citizen suit cases without even a hint that the citizen suit provisions may be unconstitutional. See, e.g., *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

Furthermore, defendant underestimates the fact that the Administrator is imbued with the discretion to pursue suspected violators in the first instance, and throughout the course of the citizen suit. A private citizen cannot commence an action if the Administrator has decided to pursue the violator, 42 U.S.C. § 11046(e), and the Administrator has, at all times, the right to intervene in the citizen suit. 42 U.S.C. § 11046(h). Therefore, the statute "give[s] the Executive Branch sufficient control over [enforcement] to ensure that the President is able to perform his constitutionally assigned duties." *Morrison,* 487 U.S. at 696, 108 S.Ct. at 2622. See *Outboard Marine,* 692 F.Supp. at 817 (the Administrator's right to intervene in citizen's suit under the Clean Water Act "gives EPA the ability to join the suit and inform a court if it believes enforcement is inequitable or contrary to the furtherance of the Act's goals").

Finally, while the present motion was pending, these very issues were addressed in *Delaware Valley Toxics Coalition, et al. v. Kurz–Hastings, Inc.,* 813 F.Supp. 1132 (E.D.Pa.1993). In that case, the court held that EPCRA's citizen suit provisions were not unconstitutional under the principle of the separation of powers, or the Appointments Clause. The court wrote that "citizen suits are not an unlawful delegation of executive power, since Congress in enacting the EPCRA did not grant to a person or persons under its control executive power." *Id.* at 1138. To the extent that the reasoning of *Delaware Valley* is consistent with the reasoning set forth above, this Court adopts *Delaware Valley* as further support for the proposition that EPCRA's citizen suit provisions are a constitutional exercise of Congress' legislative power.

Therefore, this Court holds that the citizen suit provisions of the EPCRA, 42 U.S.C. § 11046, do not violate the principle of the separation of powers, or the Appointments Clause of the Constitution, art. II, § 2, cl. 2. Plaintiff's Complaint will not be dismissed on these grounds, and defendant's motion is denied.

### B. *Due Process*

■ Defendant argues that EPCRA is unconstitutional because it violates defendant's right to due process under the law, pursuant to the Fifth Amendment to the Constitution. Defendant indicates that the statute establishes a threshold for reporting toxic chemicals at 10,000 pounds per year for chemicals used at a facility, but a higher threshold for chemicals manufactured or processed at a facility. 42 U.S.C. § 11023(f)(1). Defendant argues that, as a user of toxic chemicals, it was subjected to a lower reporting threshold than processors of toxic chemicals, and that this is a violation of due process. Defendant cites no case authority, and does not explain exactly why the statute is unconstitutional.

Defendant's argument is without merit. Courts will invalidate Congressional legislation such as this on due process grounds only where the legislation is not rationally related to a legitimate government purpose. *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). As plaintiff notes in its Memorandum, the purpose behind EPCRA is capsulized in the statement of Representative Swift:

> This new law will provide for the development of local emergency response plans in communities across the Nation. It will give important information to firefighters and other emergency response personnel about hazardous chemicals present at facilities that they may be called upon to deal with in an emergency. And it will require that people be informed of hazardous chemicals that are present in their communities, including estimates of the amounts that are released—whether routinely or accidentally—into the environment.

132 Cong.Rec. H9606 (daily ed. October 8, 1986) (statement of Rep. Swift) (see P. Const. Memo., pp. 8–9).

This Court cannot say that the reporting requirements and thresholds established by EPCRA do not rationally serve these objectives and, without any authority provided by defendant, this Court cannot say that these provisions violate the Fifth Amendment. Therefore, defendant's motion to dismiss is denied on this ground as well.

## CONCLUSION

For the reasons set forth above, this Court holds that plaintiff has standing to sue for defendant's alleged violations of EPCRA. Furthermore, this Court holds that the citizen action provisions contained in EPCRA, 42 U.S.C. § 11046, do not violate the principle of the separation of powers or the Appointments Clause, U.S. Const., Art. II, § 2, cl. 2. Finally, this Court holds that the reporting thresholds in EPCRA, 42 U.S.C. § 11023(f)(1), do not violate the Due Process Clause in the Fifth Amendment to the Constitution.

## ORDER

IT HEREBY IS ORDERED that defendant's motion to dismiss plaintiff's Complaint is DENIED.

SO ORDERED.