## In re FAC REALTY SECURITIES LITIGATION.

**This document relates to all actions.**

**No. 5:96–CV–642–BO(1).**

United States District Court,
E.D. North Carolina,
Western Division.

Nov. 5, 1997.

L. Bruce McDaniel, Raleigh, NC, for plaintiff.

Jeffrey J. Davis, Moore & Van Allen, Charlotte, NC, Jonathan D. Sasser, Moore & Van Allen, Raleigh, NC, William Kearns Davis, Bell, Davis & Pitt, P.A., Winston–Salem, NC, for defendant Factory Stores of America, Inc.

Jeffrey J. Davis, Moore & Van Allen, Charlotte, NC, Robert W. Spearman, Parker, Poe, Adams & Bernstein, Raleigh, NC, Jonathan D. Sasser, Moore & Van Allen, Raleigh, NC, William Kearns Davis, Bell, Davis & Pitt, P.A., Winston–Salem, NC, for defendant J. Dixon Fleming, Jr.

George C. Covington, Kennedy, Covington, Lobdell & Hickman, Charlotte, NC, William Kearns Davis, Bell, Davis & Pitt, P.A., Winston–Salem, NC, for defendant David A. Hodson.

---

*ORDER*

TERRENCE WILLIAM BOYLE, Chief Judge.

This matter is before the Court on Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Aldran H. La Joie asserts a cause of action against Defendants Factory Stores of America, Inc.,[1] and individual defendants J. Dixon Fleming, Jr. and David A. Hodson (collectively, the "individual Defendants") for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 (the "SEA"), 15 U.S.C. § 78j(b), and Rule 10b–5, promulgated by the Securities Exchange Commission ("SEC"), 17 C.F.R. § 240.10b–5. Plaintiff also alleges a cause of action for secondary liability against Defendants Fleming and Hodson under Section 20(a) of the SEA. 15 U.S.C. § 78t(a). For the reasons discussed below, Defendants' Motion to Dismiss will be GRANTED.

*BACKGROUND*

Defendant Factory Stores of America, Inc. (hereinafter "FAC"), is a publicly traded company in the business of owning and managing factory outlet shopping centers. J. Dixon Fleming, Jr. ("Fleming"), is the chairman and chief executive officer of FAC, and David A. Hodson ("Hodson") served as president, chief financial officer, and as a member of the board of directors of FAC from April 1993 through December 1995. Plaintiff Aldran H. La Joie ("La Joie") is a FAC shareholder who purchased shares between May 23, 1995, and February 15, 1996.

In December 1993, FAC made a secondary public offering of common stock to raise funds for the purchase of several additional factory outlet centers known as the "Willey Creek Properties." FAC issued a prospectus in connection with that offering on December 16, 1993. The acquisition of the Willey Creek Properties was consummated on December 28, 1993. Three additional Willey Creek Properties were purchased by FAC in June 1994.

On June 14, 1995, FAC announced that it had reached a tentative agreement to com-

---

1. Factory Stores of America, Inc., has subse- quently changed its name to FAC Realty Inc.

bine the factory outlet centers owned by the Public Employees Retirement System of Ohio ("OPERS") and the operations of Charter Oak Group Limited with FAC (the "Charter Oak Transaction"). On August 14, 1995, FAC announced that a definitive agreement had been signed for the Charter Oak Transaction, but cautioned that completion of the transaction remained "subject to the approval by the shareholders of [FAC], completion of financing and customary closing conditions." On November 15, 1995, FAC announced that it was "proceeding as planned" with the transaction, and issued a detailed breakdown of revenues, income and cash flow.

From August through December of 1995, the trading price of FAC shares went from approximately $22 per share to $18 per share. On December 7, 1995, FAC announced that the other party in the Charter Oak Transaction had "terminated the agreements under which (FAC) would have acquired the factory outlet centers owned by [OPERS] and the management and business operations of [Charter Oak]." Following this announcement FAC's stock dropped to 14 3/4 per share. On December 13, 1995, almost one week after the termination of the Charter Oak Transaction, Fleming allegedly told a brokerage firm that management had no plans to alter FAC's dividend policy, and that he expected the board of directors to follow management's recommendation.

On February 22, 1996, FAC announced that it expected to report fourth quarter results below analysts' expectations, a loss for 1995, and that the board had decided to adopt a more conservative dividend policy for 1996. FAC stated that its fourth quarter and fiscal year results would be released upon completion of the annual audit. FAC reported its fourth quarter results in a press release on March 28, 1996, and in its 1995 Form 10–Contract, filed on April 17, 1996. As indicated in the February 22 press release, FAC reported lower than expected results for the fourth quarter of 1995, and a net loss for the year.

Following the February and March announcements, FAC's 1995 performance, and the reduction in its dividend, FAC's stock allegedly dropped to about $9½ per share.

La Joie purchased 16,000 shares of FAC common stock between May 23, 1995, and February 15, 1996. His first purchase followed FAC's report of its results for the first quarter of 1995, which allegedly indicated that its funds from operations ("FFO") were sufficient to cover the current dividend amount (at the time, approximately 10%). La Joie's second purchase, on June 22, 1995, allegedly followed FAC's announcement that it was raising funds through a debt offering and using 3.7 million shares of FAC stock to finance the Charter Oak transaction. His third purchase, on November 6, 1995, allegedly followed reports that FAC claimed to have finalized the Charter Oak transaction.

His next purchases were on December 13, 1995, and followed a drop in FAC share price occasioned by the termination of the Charter Oak transaction. La Joie claims that this was accompanied by FAC's assurance that the dividend was secure. La Joie's final purchases, on February 14 and 15, 1996, followed a further decline in share price, which allegedly made the dividend even more attractive to investors.

La Joie filed a complaint on July 19, 1996, alleging violations by FAC of Section 10(b) of the SEA and Rule 10b–5 promulgated thereunder by the SEC, and of Section 20 of the SEA by the individual Defendants. A similar complaint was filed in this Court on October 30, 1996, by Harold Wallach and Terry Sommer.[2] These matters were consolidated by order of this Court on February 18, 1997, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, and have since been treated together for all purposes. The Defendants had filed motions to dismiss in both actions, and the parties have indicated to the Court that the issues presented by both motions to dismiss are identical. This order is thus applicable to both matters pursuant to this Court's prior order of February 18, 1997.

## ANALYSIS

*I. Motions to Dismiss and Matters Outside the Pleadings*

█ Motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Proce-

**2.** No. 5:96–CV–910–BO(3).

dure should only be granted in limited circumstances. *De Sole v. United States,* 947 F.2d 1169, 1171 (4th Cir.1991); *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989). Inferences should be construed in the light most favorable to the party opposing the motion, and the motion should be granted only if that party has no chance of prevailing on the merits of its argument.

On a motion to dismiss, the Court generally must limit itself to consideration of the facts alleged on the face of the complaint. Fed.R.Civ.P. 12(b). If, on a motion to dismiss, "matters outside the pleading are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present materials made pertinent to such motion by Rule 56." Id.; *see Winchester Homes v. Osmose Wood Preserving,* 37 F.3d 1053, 1054 (4th Cir.1994). This is to ensure that the nonmoving party has notice of the basis of the dispositive motion made against it. There are, however, some circumstances where a court may decide not to convert a motion to dismiss into a motion for summary judgment, even after considering matters outside the pleadings.

■ Such a case is presented where, as here, a plaintiff does not attach to the complaint or incorporate by reference written materials which are integral to the allegations of the complaint. In the instant case the Plaintiff necessarily relies on the alleged contents of the press releases and other public statements made by FAC to establish securities fraud. Plaintiff also refers to documents, such as FAC's Form 10–K, publicly filed with the SEC. These documents may properly be considered by this Court in ruling on this motion to dismiss because a lack of notice for the nonmoving party is not implicated. Many courts have held such circumstances merit a departure from the strict confines of Rule 12(b). *Gasner v. County of Dinwiddie,* 162 F.R.D. 280, 282 (E.D.Va. 1995); *see, e.g., Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied sub nom Cortec Indus. Inc. v. Westinghouse Credit Corp.,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Teagardener v. Republic–Franklin Inc. Pension Plan,* 909 F.2d 947, 949 (6th Cir.1990), *cert. denied,* 498 U.S. 1027, 111 S.Ct. 678, 112 L.Ed.2d 670 (1991).

The Court thus finds it appropriate to consider the relevant press releases and disclosure documents referenced by, and integral to, the complaint without converting the motion to dismiss into a motion for summary judgment.

## II. *Section 10(b) and Rule 10b–5*

### A. *General Standards*

■ Section 10(b) of the SEA and Rule 10b–5 promulgated thereunder prohibit misrepresentation in connection with the purchase and sale of securities. Section 10(b) makes it unlawful for any person to "use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). The relevant rule prescribed by the SEC pursuant to this section makes it unlawful "to make [in connection with the sale of any security] any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5. A statement or omission is "material" if "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding" whether to buy or sell shares. *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).

■ A claim under Section 10(b) and Rule 10b–5 also must allege the requisite scienter: the defendant must have acted knowingly or recklessly with respect to the truth or falsity of the statements in question. Also, the plaintiff must establish that he justifiably relied on the statement in purchasing or selling securities, and that the false or misleading statement was a proximate cause of the damages sustained. *Hillson Partners Ltd. Partnership v. Adage, Inc.,* 42 F.3d 204, 208 (4th Cir.1994); *Malone v. Microdyne*

*Corp.*, 26 F.3d 471, 476 (4th Cir.1994); *Cooke v. Manufactured Homes, Inc.*, 998 F.2d 1256, 1260–61 (4th Cir.1993).

 Finally, "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b–5." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n. 17, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Rule 10b–5 imposes a duty to disclose only "when silence would make other statements misleading or false." *Taylor v. First Union Corp.*, 857 F.2d 240, 243–44 (4th Cir.1988), *cert. denied*, 489 U.S. 1080, 109 S.Ct. 1532, 103 L.Ed.2d 837 (1989).

### B. Pleading Requirements for Fraud and the Private Securities Litigation Reform Act

 Allegations of securities fraud under Section 10(b) must meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. That is, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed.R. Civ.P. 9(b). As the Fourth Circuit has stated, "[w]here fraudulent projections are alleged, the plaintiff must ... identify in the complaint with specificity some reason why the discrepancy between a company's optimistic projections and its subsequently disappointing results is attributable to fraud." *Hillson Partners*, 42 F.3d at 209.

Congress enacted the Private Securities Litigation Reform Act (the "PSLRA") in 1995, amending the SEA by heightening the pleading requirements for private actions alleging securities fraud. Thus, the PSLRA bolstered the pleading standards by requiring that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." § 101(b), 109 Stat. 737 (1995), codified at 15 U.S.C. § 78u–4(b)(1).

In addition, where state of mind is an element of the charged offense, as with claims under Section 10(b), the PSLRA provides that "the complaint shall state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." § 101(b), 109 Stat. 737, codified at 15 U.S.C. § 78u–4(b)(2). Finally, the PSLRA amended the SEA to specifically provide that "[i]n any private action arising under [the SEA], the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) [quoted above] are not met." § 101(b), 109 Stat. 737, codified at 15 U.S.C. § 78u–4(b)(3).

### C. Plaintiff Has Not Established a Claim Under Section 10(b)

Plaintiff's allegations, viewed systematically or individually, fail to form the basis for the imposition of liability under Section 10(b) of the SEA.

 *1. The Willey Creek Properties.* Plaintiff first alleges security fraud with respect to the transactions involving FAC's acquisition of the Willey Creek Properties in December 1993. Specifically, Plaintiff charges that these properties were purchased at inflated prices from entities owned or controlled by the individual Defendants, Fleming and Hodson. Complaint ¶ 27. This allegation, however, is based upon "information and belief." Id. As discussed above, Section 21D(b)(1) of the SEA (bolstered by the pleading requirements established by the PSLRA) demands that, when alleged facts are plead upon information and belief, the complaint "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

The only basis Plaintiff cites for this allegation, however, is that the Willey Creek Prospectus stated that "certain unnamed affiliated entities were part of the Willey Creek Group." Complaint ¶ 27. From this, Plaintiff alleges that Fleming and Hodson are the "affiliated entities." Indeed, the prospectus itself expressly discloses all of the relevant interests held by the individual Defendants, without indicating that Fleming and Hodson had any interest in the Willey Creek Properties. The inference drawn by Plaintiff, that FAC purchased the Willey Creek Properties from entities associated with Fleming and Hodson is unsupported by the Prospectus. As the Prospectus apparently provides the

only factual basis for Plaintiff's claim of interest in the purchase of the Willey Creek Properties, Plaintiff's assertion fails to support a claim and must be dismissed.

▆ *2. The Charter Oak Transaction.* Plaintiff asserts that FAC falsely stated "that all of the requirements of the [Charter Oak] Transaction were in place, and thus falsely reassured the investing public that the deal would go forward." Complaint ¶ 78. Plaintiff points to no statement or announcement from FAC declaring or implying that the Charter Oak Transaction was definitively proceeding toward a closing. Plaintiff again fails to satisfy the pleading requirements of the SEA with respect to the Charter Oak Transaction.

▆ Plaintiff also alleges that FAC "failed to disclose the true reason for the failure of the Transaction." Complaint ¶ 57. As noted above, however, the mere omission of information is not actionable under Section 10(b) and Rule 10b–5. Finally, Plaintiff alleges no facts which establish that FAC acted with the requisite scienter to violate the SEA. Plaintiff's claims with respect to the Charter Oak Transaction must be dismissed.

▆ *3. Statements Regarding Earnings and "Funds from Operation."* Plaintiff claims that FAC's public statements in the years 1994 and 1995 with regard to "funds from operation," a measure of cash flow, were inflated. Plaintiff asserts that this was revealed in FAC's fiscal year results from 1995, and in its 1995 Form 10–K filed with the SEC. Thus, Plaintiff argues that FAC was "paying dividends beyond the limits of its FFO," Complaint ¶ 77, borrowed money to support its dividend payments instead of to fund expansion and development, id., and engaged in "overaggressive accounting practices," id. ¶ 75.

Plaintiff makes much of its claim that FAC "improperly adjusted FFO upward by $3.4 million attributed to the Willey Creek Properties." Id. Earlier in the complaint, however, Plaintiff acknowledges that this $3.4 million adjustment was disclosed by FAC. Id. at ¶ 34. While this Court is mindful of the Supreme Court's warning that burying the truth in public statements cannot "neutralize the deceptive" in those same statements, *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1097, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991), it is clear that FAC did not attempt to obscure the fact that it was adjusting its FFO calculation.

In a similar vein, Plaintiff asserts that FAC falsely represented that FFO was covering dividends during the second and third quarters of 1995, when FAC was actually borrowing to fund dividend payments. FAC's November 15 press release, however, clearly revealed that FFO was not covering dividends, and reported FFO in both adjusted and unadjusted form. FAC fully disclosed the nature of the relationship between FFO and dividend payments.

To argue, as Plaintiff attempts to do, that FAC fraudulently inflated its financial figures, Plaintiff would have to show that FAC acted with the requisite scienter and materially overstated its reported earnings and FFO. Plaintiff merely relies on inferences to make this claim, however. For example, Plaintiff points to FAC's 1995 year-end Form 10–K, filed with the SEC, which reported a loss in the fourth quarter of that year. Plaintiff argues that this suggests that FAC finally was forced to "come clean by the 1995 audit…." Complaint ¶ 79. Merely reporting a loss in a year-end financial statement does not, of course, prove that earlier statements were fraudulent.

Finally, Plaintiff fails to establish that FAC acted with the requisite scienter in allegedly tampering with its financial statements. Plaintiff argues that FAC inflated its financial results for the first three quarters of 1995 in order to "consummate the [Charter Oaks] Transaction by paying with overvalued securities." Id. This was necessary, Plaintiff contends, because FAC had to generate new revenues that "would serve to conceal the poor performance of … the Willey Creek Properties, for which … the Company's shareholders had overpaid the individual Defendants." Id. Fleming and Hodson had no interest in the Willey Creek Properties, however, thus vitiating this alleged motive for FAC fraudulently misrepresenting its financial figures.

Plaintiff's last contention is that FAC "falsely reassured the investing public that the Company's dividend was secure for the foreseeable future." Complaint ¶ 59. Plaintiff asserts that, in a conference call with brokers on December 13, 1995, Fleming "stated that (1) management had no plans to alter the Company's dividend policy, (2) the Company's Board of Directors reassesses the dividend policy once per year at the end of the first quarter, and (3) he expected the Board to follow management's recommendation of maintaining the dividend at then-current levels throughout 1996." Id.

Such a statement is, of course, merely speculative. Also, Plaintiff fails to point to any facts which would establish the requisite scienter. The only motive Plaintiff alleges for FAC wanting to inflate its stock price is that FAC wanted to fund the Charter Oak Transaction with overvalued securities. But the alleged statements by Fleming came after the termination of the Charter Oak Transaction. And Plaintiff systematically fails to identify any facts giving rise to the inference that this statement was made in a knowing or reckless attempt to deceive the market. The allegation, by itself, is conclusory. Plaintiff can highlight no facts which show that Fleming did not actually believe what he told the brokers on December 13, 1995.

Plaintiff's ad hoc accusations regarding FAC's financial reporting fail to meet the pleading standards of the SEA and must be dismissed.

### III. Claims Against Individuals Under Section 20(a) of the SEA

Section 20(a) of the SEA provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as the controlled person." 15 U.S.C. § 78t(a). Because of the derivative nature of liability under Section 20(a), the plaintiff must first establish a primary violation of the SEA under Section 10(b). *See Pitten v. Jacobs,* 903 F.Supp. 937, 951 (D.S.C.1995).

Also, a plaintiff alleging liability under Section 20(a) must allege and prove that the individual defendant sought to be charged as a "controlling person": (1) had the power to control the actions of the primary violator, and (2) was a culpable participant in the alleged illegal activity. *See Carpenter v. Harris, Upham & Co.,* 594 F.2d 388, 394 (4th Cir.), *cert. denied,* 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979).

Plaintiff's failure to establish liability of FAC, the would-be "controlled entity," under Section 10(b), necessarily dooms the attempt to establish Fleming's and Hodson's liability under Section 20(a). Similarly, Plaintiff fails to allege that Fleming or Hodson could have controlled the actions of the primary alleged violator. Plaintiff's accusations against Fleming and Hodson must therefore be dismissed at this stage.

### CONCLUSION

For the reasons stated above, it is the judgment of this Court that Plaintiff has failed to establish a valid claim against the Defendants under the Securities Exchange Act of 1934. Defendants' Motion to Dismiss is GRANTED.

So ordered.